**Angela RAWLS, et al.**

v.

**Don SUNDQUIST, et al.**

No. 3–96–0107.

United States District Court,
M.D. Tennessee,
Nashville Division.

May 23, 1996.

Richard Marshall Brooks, Carthage, TN, for plaintiffs.

Arthur Crownover, II, Nashville, TN, for defendants.

## MEMORANDUM

CAMPBELL, District Judge.

Pending before the Court are Defendants' Motion to Dismiss (Docket No. 6) and Plaintiffs' Response thereto (Docket No. 11). For the reasons more fully stated herein, Defendants' Motion to Dismiss (Docket No. 6) is GRANTED.

The issue in this case is whether a satellite dish donated to the State of Tennessee, Department of Correction, for the use of death row inmates has been unconstitutionally removed.

The Court holds that Plaintiffs' due process rights have not been violated because Plaintiffs do not have a constitutionally-protected right to the satellite dish or to watch satellite television.

The Court further holds that Plaintiffs' equal protection rights have not been violated because removal of the satellite dish is within the wide-ranging discretion of state prison officials and Plaintiffs have failed to show that there is no rational basis for such removal.

Plaintiffs filed this action alleging federal jurisdiction pursuant to 28 U.S.C. § 1331, "inasmuch as federal questions of violations of constitutional rights under 42 U.S.C. § 1983 are alleged." Complaint, ¶ 1. Because the Court finds that Plaintiffs' Complaint does not state a valid claim for violation of constitutional rights under Section 1983, the case is dismissed for lack of subject matter jurisdiction.

■ On a motion to dismiss, the district court must construe the complaint in a light most favorable to the plaintiff, accept all of the factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claims that would entitle him to relief. *Columbia Natural Resources, Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir.1995).

Plaintiffs King, Sample and Coker ("the Inmate Plaintiffs") are inmates in Unit Two at Riverbend Maximum Security Institution ("RMSI") in Nashville, Tennessee. Unit Two at RMSI specifically houses male inmates who have been sentenced to death, "death row" inmates. Plaintiffs Rawls, House, Wray and Keyes ("the Donor Plaintiffs") are not incarcerated.

On or about March 23, 1993, Plaintiff Rawls, on behalf of the Donor Plaintiffs and others,[1] donated to the State of Tennessee, Department of Correction, a satellite dish, receivers and related accessories. Plaintiff Rawls signed an Acknowledgement of Donation Form which indicated that the donation was "FOR RMSI UNIT TWO." That Acknowledgement of Donation Form is not executed by anyone on behalf of the State. Then–Governor Ned McWherter acknowledged the gift in a letter to Plaintiff Rawls dated August 5, 1993, but the letter from

---

1. Plaintiffs allege that the funds for purchase of the satellite equipment came from the Donor Plaintiffs, the Inmate Plaintiffs and others. Complaint, ¶ 10.

Governor McWherter makes no reference to any specific use or purpose of the gift.

The satellite equipment at issue was installed at Unit Two, RMSI, and operated for the use of the inmates there until on or about April 21, 1995, when, upon orders from Defendant Governor Don Sundquist, Defendants Warden Ricky Bell and Commissioner Donal Campbell directed that the satellite equipment be disconnected and removed from Unit Two. Plaintiffs contend that the equipment is currently being stored at RMSI.

Plaintiffs allege that Defendants have taken their property without due process of law, in violation of the Fourth, Fifth and Fourteenth Amendments of the United States Constitution [2] and further contend that Defendants' actions constituted a denial of Plaintiffs' equal protection rights. Plaintiffs also assert that the conduct of the Defendants amounted to conversion, fraudulent misappropriation and misuse of property under state law. For these claims, Plaintiffs seek injunctive relief and money damages.

Defendants have filed a Motion to Dismiss, alleging that no constitutional rights have been violated; that Plaintiffs' allegations against the Tennessee Department of Correction are barred by the Eleventh Amendment; that Defendants are immune from monetary damages; and that Defendants are entitled to qualified immunity. Because the Court finds there was no constitutional violation by the Defendants, it need not reach Defendants' other arguments.

## PLAINTIFFS' CONSTITUTIONAL CLAIMS

Section 1983 of Title 42 of the United States Code provides a civil remedy for violation of constitutional rights. It states:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States of other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. Thus, Plaintiffs must establish that the Defendants, acting under color of state law, deprived Plaintiffs of rights, privileges or immunities secured by the Constitution or laws of the United States.

The Fourteenth Amendment to the U.S. Constitution provides that no State shall "deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the law." U.S. Const. amend. XIV, § 1. Thus, *if* Defendants in fact deprived Plaintiffs of life, liberty or property, then Plaintiffs were entitled to the protections of due process. Also, Plaintiffs are entitled to equal protection of the law. Here, however, Plaintiffs have failed to show that they have been deprived of any constitutionally-protected right.

### DUE PROCESS

Plaintiffs' claim that their property was taken without due process of law fails because Plaintiffs have not established that they had a constitutionally-protected interest in the property which was taken.

The satellite equipment, having been given by the Donor Plaintiffs to the State of Tennessee, Department of Correction, no longer belonged to the Donor Plaintiffs. In other words, the Donor Plaintiffs had no property interest in the equipment at issue once it was given to the State of Tennessee. In addition, the Inmate Plaintiffs never had any property interest in the satellite equipment at all. The equipment was not given to the Inmate Plaintiffs; it was given to the State.[3]

---

2. Although the first paragraph of Plaintiffs' Complaint references violations of the Tennessee Constitution, no such allegations appear anywhere else in the Complaint. Plaintiffs' claim under the Tennessee Constitution fails to comply with Rule 8 of the Federal Rules of Civil Procedure and is dismissed, without prejudice, on that basis. In any event, the Court declines to exercise supplemental jurisdiction over the state law claim pursuant to 28 U.S.C. § 1367(c)(3).

3. Defendants' argument concerning negligent or intentional deprivation of prisoner property is

█ To claim a property interest in a benefit, a person clearly "must have more than a unilateral expectation of it. He must ... have a legitimate claim of entitlement to it." *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). In addition, property interests are not created by the Constitution. "Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Id.*

█ Plaintiffs attempt to create property and/or liberty interests in the satellite equipment by reliance upon the Contract Clause of the U.S. Constitution, a Tennessee Department of Corrections ("TDOC") policy and American Correctional Association Standards.[4]

In their Contract Clause argument, Plaintiffs assert that Defendants' actions violated and impaired the terms of a specific agreement under which the gift of the satellite equipment was given to the State.[5] Plaintiffs claim the gift was donated "exclusively" for the use and benefit of plaintiffs at RMSI Unit Two and that Defendants' misuse violates the Contract Clause.

Plaintiffs' reliance upon the Contract Clause, however, is misplaced. Article 1, Section 10 of the U.S. Constitution provides, in pertinent part: "No State shall ... pass any ... Law impairing the Obligation of Contracts...." U.S. Const. art. 1, § 10, cl. 1. There is no State law at issue here. Plaintiffs have not even alleged that a State statute violates their rights.

█ It is well settled that "[t]he prohibition upon the passage of state laws impairing the obligation of contracts refers only to the law of a state, and not to judicial decisions, or to the acts of state tribunals or officers under statutes in force at the time of the making of the contract the obligation of which is alleged to have been impaired." *Hanford v. Davies,* 163 U.S. 273, 278, 16 S.Ct. 1051, 1054, 41 L.Ed. 157 (1896). The Contract Clause is inapplicable to this case.[6]

The Donor Plaintiffs assert no other basis for claiming a property or liberty interest in this case. They had no constitutionally-protected interest in the satellite equipment which they donated to the State (of Tennessee. Therefore, no process was due them before that equipment was removed from Unit Two at RMSI.

This Court need not reach the issue of whether there was in fact a "contract" between the Donor Plaintiffs and the State or whether Plaintiffs' claims amount to a valid breach of contract claim, since those questions are state law issues.[7] The Court notes, however, that nowhere in this record have Plaintiffs presented evidence that their gift was accepted by the State under specific terms and conditions.[8]

█ The Inmate Plaintiffs have no property or liberty interest in the satellite equipment at issue either and, therefore, raise no valid constitutional claim. There is no constitutional right to television while incarcerated. *Dede v. Baker,* 1994 WL 198179 at *2 (6th Cir.1994); *Temple v. Dahm,* 905 F.Supp. 670, 674 (D.Neb.1995) ("Plaintiff has no right

misplaced, since the equipment at issue here was not prisoner property.

4. Plaintiffs have failed to provide copies of these standards to the Court and, therefore, they cannot be considered.

5. Obviously, the Inmate Plaintiffs have no valid claim for violation of this alleged agreement, since they were not parties to it. In fact, Ms. Rawls is the only party who signed it and therefore the only one with standing to argue for its enforcement.

6. The cases cited by Plaintiffs for this proposition are distinguishable, not binding upon this Court,

and/or deal with the constitutionality of particular statutes or laws.

7. The Court declines to take jurisdiction of the state law issues pursuant to 28 U.S.C. § 1367(c)(3).

8. The Acknowledgement of Donation Form (Complaint, Exhibit A) is not executed by anyone on behalf of the State. The letter from then-Governor McWherter acknowledging the gift (Complaint, Exhibit B) makes no reference whatsoever to the use or purpose of the gift or any terms and conditions.

to view television as arising from the Constitution."); *Montana v. Commissioners Court,* 659 F.2d 19, 23 (5th Cir.1981); *Murphy v. Walker,* 51 F.3d 714, 718, n. 8 (7th Cir.1995); *Glasshofer v. Jeffes,* 1989 WL 95360 at *2 (E.D.Pa.1989) ("No court has recognized a federal constitutional right to the usage of radio and television by inmates."), *aff'd,* 897 F.2d 521 (3d Cir.1990); and *Lester v. Clymer,* 1989 WL 66621 at *2 (E.D.Pa.1989) ("While it is not a subject of frequent litigation, it is nevertheless established that prisoners have no constitutional right to television.").

■ Without such an underlying right, it follows with even stronger reason that there is no constitutional right to satellite/cable equipment for a television. In other words, Plaintiffs have no constitutional right to the movie channel.

The Sixth Circuit Court of Appeals found, in 1992, that prisoners have no constitutional right to video cassette recorders ("VCRs"). In *Besh v. Reynolds,* 1992 WL 318613 (6th Cir.1992), the court held that local prison policies did not give the plaintiff a protected interest in possessing a VCR. Thus, there was no due process violation when the prison officials confiscated the plaintiffs' VCR, and the plaintiffs' complaint did not rise to a constitutional level. *Id.* at *1. Similarly here, the Inmate Plaintiffs' complaint does not rise to a constitutional level.

■ Plaintiffs allege that TDOC Policy 503.01 gives the Inmate Plaintiffs a protected liberty interest in the satellite equipment at issue. Plaintiffs' reliance again is misplaced. TDOC Policy 503.01 says absolutely nothing about television, cable or otherwise. TDOC Policy 503.01 governs inmate organizations. It cannot be the source of a protected liberty interest in satellite television.

Even if the TDOC policy did address television for inmates, it does not necessarily follow that such a policy would create a constitutionally-protected liberty interest in the satellite equipment at issue here. A liberty interest may be created by state law where

the deprivation "imposes atypical and significant hardship on the inmates in relation to the ordinary incidents of prison life." *Sandin v. Conner,* —— U.S. ——, ——, 115 S.Ct. 2293, 2300, 132 L.Ed.2d 418 (1995). Here, however, Plaintiffs have failed to show that the deprivation of satellite television imposed an "atypical and significant hardship."

Because the Inmate Plaintiffs have failed to establish any property or liberty interest in the satellite equipment at issue herein, their claims for violation of due process also must fail and are DISMISSED with prejudice.

*EQUAL PROTECTION*

■ Plaintiffs allege that the Inmate Plaintiffs are being denied equal protection of the law because other inmates at RMSI have access to satellite equipment and Plaintiffs do not. Merely treating two groups differently does not necessarily violate the equal protection clause. *Bonner v. Lewis,* 857 F.2d 559, 565 (9th Cir.1988).[9]

■ Except where an equal protection case involves a suspect or quasi-suspect classification or the denial of a fundamental right to a particular class, state action allegedly violating the Equal Protection Clause will be reviewed under the rational basis level of scrutiny. *Thornton v. City of Allegan,* 863 F.Supp. 504, 508 (W.D.Mich.1993). "A classification neither involving fundamental rights nor proceeding along suspect lines is accorded a strong presumption of validity." *Heller v. Doe by Doe,* 509 U.S. 312, 319, 113 S.Ct. 2637, 2642, 125 L.Ed.2d 257 (1993); *see also Contractors Ass'n v. City of Philadelphia,* 6 F.3d 990, 1011 (3d Cir.1993).

■ Here, Plaintiffs correctly have not even alleged that "death row" inmates are a suspect or protected class. There is no basis in law for defining death row inmates as a suspect class for purposes of the equal protection clause. In addition, as established above, the right to satellite television is not a fundamental or protected right. Thus, equal protection requires only that this action be

9. The "central purpose" of the Equal Protection Clause is "to prevent the States from purposefully discriminating between individuals on the basis of race." *Aiken v. City of Memphis,* 37 F.3d 1155, 1161 (6th Cir.1994). Here, there is no allegation that Plaintiffs were treated differently because of their race.

rationally related to a legitimate state interest.

In determining whether there is a legitimate state interest in this case, the Court recognizes that traditionally, federal courts have adopted a broad hands-off attitude toward problems of prison administration. The Supreme Court explained in *Turner v. Safley*, 482 U.S. 78, 89, 107 S.Ct. 2254, 2262, 96 L.Ed.2d 64 (1987):

> Subjecting the day-to-day judgments of prison officials to an inflexible strict scrutiny analysis would seriously hamper their ability to anticipate security problems and to adopt innovative solutions to the intractable problems of prison administration. The rule would also distort the decision-making process, for every administrative judgment would be subject to the possibility that some court somewhere would conclude that it had a less restrictive way of solving the problem at hand. Courts inevitably would become the primary arbiters of what constitutes the best solution to every administrative problem, thereby "unnecessarily perpetuat[ing] the involvement of the federal courts in affairs of prison administration."

*Id.*, at 89, 107 S.Ct. at 2262 (citations omitted).

▮▮▮▮ If the plaintiffs can show a violation of their equal protection rights, the Court must determine if the challenged jail policies are reasonably related to legitimate penological interests. *Shaheed v. Winston*, 885 F.Supp. 861, 869 (E.D.Va.1995). Before reaching that analysis, however, the Court must first determine whether a constitutional violation has occurred. *Id.* "Unless, therefore, plaintiffs can show that the challenged regulation impinges on a constitutional right—which in an equal protection setting requires a showing of discriminatory intent— the *Turner/O'Lone* [10] reasonable relation to legitimate penological interest test is not properly invoked." *Salaam v. Collins*, 830

F.Supp. 853, 859 (D.Md.1993), *aff'd*, 70 F.3d 1261 (4th Cir.1995).

▮▮▮▮ Defendants' actions "cannot run afoul of the Equal Protection Clause if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose." *Heller*, at 320, 113 S.Ct. at 2642. Further, the State need not actually articulate at any time the purpose or rationale supporting its classification. *Id.* Instead, "a classification 'must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification.'" *Id.* (quoting *FCC v. Beach Communications, Inc.*, 508 U.S. 307, 311–314, 113 S.Ct. 2096, 2100–2101, 124 L.Ed.2d 211 (1993)).

▮▮▮▮ The State, moreover, has no obligation to produce evidence to sustain the rationality of a statutory classification. *Heller*, at 320–322, 113 S.Ct. at 2643. "The burden is on the one attacking the [state action] to negative every conceivable basis which might support it." *Id.*; *see also Contractors Ass'n*, 6 F.3d at 1011.

▮▮▮▮ Here, the Plaintiffs have cited no authority whatsoever for their bald assertion that no legitimate or penological justification exists for Defendants' action. It cannot be disputed that prison administrators have wide-ranging discretion in adopting and executing policies and procedures to maintain order, discipline and security. *See, e.g., Ward v. Dyke*, 58 F.3d 271, 273 (6th Cir. 1995); *Brown v. Johnson*, 743 F.2d 408, 410 (6th Cir.1984) (citing *Bell v. Wolfish*, 441 U.S. 520, 547, 99 S.Ct. 1861, 1878, 60 L.Ed.2d 447 (1979)).

▮▮▮▮ Under the equal protection clause, prison administrators are entitled to place restrictions on the opportunities, rights and privileges accorded protective custody inmates, as compared to those available to inmates in the general population, provided

---

**10.** In *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987), the Court held that prison regulations alleged to infringe constitutional rights are judged under a "reasonableness" test. *Id.* at 349, 107 S.Ct. at 2404. The Supreme Court reaffirmed its refusal to substitute its judgment on the "difficult and sensitive matters of institutional administration for the determinations of those charged with the formidable task of running a prison." *Id.* at 353, 107 S.Ct. at 2406.

that those restrictions are rational rather than arbitrary and capricious. *Cody v. Hillard,* 599 F.Supp. 1025, 1054, n. 6 (D.S.D. 1984) (citing *Nadeau v. Helgemoe,* 561 F.2d 411, 416 (1st Cir.1977)), *aff'd,* 799 F.2d 447 (8th Cir.1986).

Plaintiffs here have failed to show that Defendants' actions have no rational basis. To the contrary, the Court finds that the denial of satellite television for those inmates who are sentenced to death is within the wide-ranging discretion granted to prison administrators and does not impinge the Inmate Plaintiffs' constitutional rights. There is no basis in law for this Court to micromanage the prison system by ordering what television programs, if any, prisoners may watch.

Accordingly, Plaintiffs' equal protection claims must fail and are DISMISSED with prejudice.

## STATE LAW CLAIMS

Plaintiffs' remaining claims (conversion, fraudulent misappropriation, misuse) are state law claims, and this Court, in its discretion, declines to exercise supplemental jurisdiction over those claims. 28 U.S.C. § 1367(c)(3). The state law claims are DISMISSED without prejudice.

## CONCLUSION

For the above reasons, there being no valid constitutional claim before it, this Court has no subject matter jurisdiction in this action. Accordingly, Defendants' Motion to Dismiss is GRANTED.

It is so ORDERED.