Linda SPIVEY, et al., Plaintiffs,

v.

STATE OF OHIO, Defendant,

Tanya MIXON, et al., Plaintiffs,

v.

STATE OF OHIO, et al., Defendants.

Nos. 1:97CV2308, 1:97CV2309.

United States District Court,
N.D. Ohio,
Eastern Division.

March 6, 1998.

Joyce Goldstein, Bryan P. O'Connor, James A. Ciocia, Cleveland, OH, for Plaintiffs in 197CV2308.

Roger F. Carroll, James G. Tassie, Christopher M. Culley, Office of the Attorney General, Columbus, OH, for Defendants in 197CV2308.

Scott H. Schooler, George L. Forges, Mark A. McClain, Cleveland, OH, for Plaintiffs in 197CV2309.

Roger F.Carroll, James G. Tassie, Christopher M. Culley, Office of the Attorney General, Columbus, OH, Frederick R. Nance, Brenda M. Johnson, Stegen A. Friedman, Cleveland, OH, for Defendants in 197CV2309.

## MEMORANDUM AND ORDER

WHITE, Chief Judge.

These two consolidated actions arise under the Civil Rights Act of 1871, 42 U.S.C. § 1983, alleging violations of the Fourteenth Amendment to the United States Constitution, the Voting Rights Act, 42 U.S.C. § 1971 *et seq.* and the Constitution of the State of Ohio. The Plaintiffs are taxpayers, registered voters who either have children attending the Cleveland Public Schools or are employed by the Cleveland School District and the National Association for the Advancement of Colored People, Cleveland Branch. They are seeking declaratory relief to prevent implementation of Substitute House Bill No. 269 (H.B.269) passed by the General Assembly of the State of Ohio for the purpose of creating the classification of *"municipal school district,"* changing the number of members and organization of the Cleveland School District Board of Education, placing the Mayor of the City of Cleveland in charge of the Cleveland School District and eliminating all licensing, experimental and educational requirements for appointees employed in positions with responsibilities similar to those of superintendent, treasurer and business manager in all other school districts in the State of Ohio. This matter is before the Court upon cross motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure filed in both cases.

With regard to the standard to be applied, Rule 12(c) provides:

After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings. If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

In determining whether H.B. 269 violates the United States and Ohio Constitutions, the Court will have to consider whether a rational basis exists for its enactment. *Plyler v. Doe,* 457 U.S. 202, 216, 102 S.Ct. 2382, 2394, 72 L.Ed.2d 786 (1982). The Plaintiffs argue that consideration of justification for enactment of H.B. 269 involves matters outside the pleadings requiring the 12(c) motion to be treated as a motion for summary judgment.

■ In *Morgan v. Church's Fried Chicken,* 829 F.2d 10 (6th Cir.1987), the defendant filed a motion for judgment on the pleadings but requested relief pursuant to Rule 12(b)(6). The Sixth Circuit ruled that where a 12(b)(6) defense is raised in a 12(c) motion for judgment on the pleadings, the standard for deciding a 12(b)(6) motion is used. *Id.* at 11. A complaint may be dismissed if it is clear that no relief could be granted under any set of facts. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). The facts pleaded by the plaintiff must be accepted as true and the complaint must be construed in the light most favorable to the plaintiff. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). Legal conclusions or unwarranted factual inferences may not be accepted as true. *Morgan v. Church's Fried Chicken,* 829 F.2d at 12.

■ Rule 12(b) also provides that, on a motion under Rule 12(b)(6), if matters outside the pleadings are considered, the motion shall be treated as one for summary judgment. However, a court may go outside the pleadings when ruling on a motion to dismiss for failure to state a claim in determining whether a statute bears a rational relationship to a legitimate state purpose. *Mahone v. Addicks Utility District of Harris County,* 836 F.2d 921, 936 (5th Cir.1988). The Court in *Mahone* explained that going outside the complaint to hypothesize reasons for enacting a statute will not conflict with the requirement that the pleaded facts be accepted as true. *Id.* Truth is not the issue in such case and using discovery procedures to de-

velop facts showing the state's true reasons for its actions could be inefficient and unnecessary. *Id.*

The Seventh Circuit allows an equal protection action requiring a rational basis review to be dismissed pursuant to Rule 12(b)(6). In order *"to survive a motion to dismiss for failure to state a claim, a plaintiff must allege facts sufficient to overcome the presumption of rationality that applies to governmental classifications."* *Wroblewski v. City of Washburn,* 965 F.2d 452, 460 (7th Cir.1992). A conclusory assertion that the state's enactment of the statute is without rational bases is insufficient to overcome the presumption of rationality when justification is readily apparent. *Id.* See, *Shanks v. Forsyth County Park Authority,* 869 F.Supp. 1231, 1236 (M.D.N.C.1994).

The justification for H.B. 269 is readily apparent. There is no dispute that the Cleveland City School District has been financially and operationally troubled. In 1996, the "Cleveland Summit on Education" was convened to find a solution to this problem. The Summit created the Cleveland City Schools Advisory Committee (Advisory Committee) to examine government systems for urban school districts throughout the country and to recommend a better system for the Cleveland City School District. The Advisory Committee found that elected boards of education had very high turnover ratios and often did not consist of qualified individuals. Because of success in implementing appointed boards of education in Boston, Baltimore and Chicago, the Advisory Committee recommended that the Cleveland City School District be governed by an appointed board instead of an elected board of education. The Ohio General Assembly accepted the Advisory Committee's recommendation, and on July 22, 1997, passed H.B. 269 thereby enacting Ohio Revised Code §§ 3311.71–.77, and amending O.R.C. §§ 102.02, 3313.02, 3313.04, 3313.11, 3313.70, 3315.15 and 3329.08.

H.B. 269 created a new classification of school district known as a *"municipal school district."* A municipal school district is defined as *"a school district that is or has ever been under a federal court order requiring supervision and operational, fiscal and personnel management of the district by the state superintendent of public instruction."* O.R.C. § 3311.71(A)(1).

Upon the release of a municipal school district from a federal court supervision order, the management and control of the municipal school district is immediately assumed by a new nine-member board of education whose members are appointed by the mayor of the municipal corporation having the greatest portion of territory in the municipal school district. The Cleveland City School District is composed of the Villages of Bratenahl, Linndale and Newburgh Heights, a portion of Garfield Heights and the City of Cleveland. Because the City of Cleveland has the greatest portion of territory in the Cleveland City School District, the Mayor of Cleveland would appoint the new board members if the Court finds that H.B. 269 is constitutional. The nine board members are selected from a slate of at least 18 candidates nominated by a *"municipal school district nominating panel."* O.R.C. § 3311.71(B)-(C). The panel consists of three parents or guardians of children attending the schools in the municipal school district, appointed by the district's parent-teacher organization or similar organization selected by the state superintendent; three persons appointed by the mayor; one person appointed by the president of the legislative body of the municipal corporation containing the greatest portion of territory in the municipal school district; a school teacher, appointed by the collective bargaining representative of the school district's teachers; a school principal, selected by a vote of the school district's principals; a representative of the business community, appointed by an organized collective business entity selected by the mayor; and a president of a public or private institution of higher education located within the municipal school district, appointed by the state superintendent. O.R.C. § 3311.71(C). The nominees must reside within the municipal school district and at least one member must reside in the municipal school district but not in the municipal corporation containing the greatest portion of the district's terri-

tory. O.R.C. § 3311.71(D). Four of the nine members shall have displayed, prior to appointment, significant expertise in either education, finance or business management. *Id.* In addition to the nine members appointed by the mayor, the president of a state university or community college located within the municipal school district shall serve as a nonvoting *ex officio* member. O.R.C. § 3311.71(G).

For the first thirty months after appointment of the board, the mayor also appoints the chief executive officer and fills any vacancies in that position. O.R.C. § 3311.72(B)(1). Subsequent action with respect to the chief executive officer requires the concurrence of the board. O.R.C. § 3311.72(B)(2).

The members of the board serve until a mandatory referendum is held to determine whether the mayor shall continue to appoint the members of the board. O.R.C. § 3311.73(A). The referendum must take place in the general election held in the first even-numbered year occurring at least four years after the date the new board assumes control of the municipal school district. *Id.* If the voters elect to continue the mayoral appointment system, the mayor must appoint a new board on the immediately following first day of July. O.R.C. § 3311.73(C). In the event that the voters disapprove of the mayoral appointment system, a new seven member board of education shall be elected at the next regular election occurring in November of an odd-numbered year. O.R.C. § 3311.73(D).

Within 60 days after the initial convening of the municipal school district nominating panel, the state superintendent must establish an oversight committee to review and evaluate the progress of the board. Thereafter, the community oversight committee, after consultation with the board, is required to submit an annual report to specific members of the General Assembly addressing the financial, operational, academic, community and other issues involving the school district as a result of the municipal school district mayoral appointment system. O.R.C. § 3311.77(A). Members of the community oversight committee are appointed by the state superintendent and must reside in and be a parent or guardian of a child attending a public school in the municipal school district. O.R.C. § 3311.73(B).

At this time, the Cleveland City School District is the only Ohio school district that qualifies as a municipal school district under O.R.C. § 3311.71(A). On March 3, 1995, in *Reed v. Rhodes,* Case No. 1:73CV1300, the United States District Court for the Northern District of Ohio directed the state superintendent to assume immediate supervision and operational, fiscal and personnel management of the Cleveland City School District. In its March 3 Order, the Court was concerned with the Cleveland Board of Education's ability to administer its educational agenda, the municipal school district's critical financial condition, the absence of effective fiscal and management controls that had exacerbated the district's operational shortcomings and materially eroded its efforts and its ability to fulfil its educational responsibilities. Under the terms of H.B. 269, when the federal court releases the Cleveland City School District from state supervision under the March 3, 1995 Order, the provisions of H.B. 269 will apply to the Cleveland City School District.

The Plaintiffs allege that H.B. 269 violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and Article I, Section 2 of the Ohio Constitution.[1] The Fourteenth Amendment and Article I, Section 2 of the Ohio Constitution provide that a citizen of a state is entitled to equal protection of the laws. The State of Ohio has adopted federal standards in interpreting Ohio's Equal Protection Clause. *Keaton v. Ribbeck,* 58 Ohio St.2d 443, 391 N.E.2d 307, 308 (1979).

When a classification neither involves a suspect class nor a fundamental right, there is a strong presumption of validity. *Plyler v. Doe,* 457 U.S. at 216, 102 S.Ct. at 2394–95. In such case, state action allegedly violating the Equal Protection Clause is

---

1. *The Spivey complaint contains seven causes of action while the Mixon complaint has included eight claims. The complaints are similar. References will be to the Mixon complaint but the following discussion applies to both.*

reviewed to determine whether there is a rational basis for the inequality. *Heller v. Doe by Doe,* 509 U.S. 312, 320, 113 S.Ct. 2637, 2642, 125 L.Ed.2d 257 (1993). *Rawls v. Sundquist,* 929 F.Supp. 284, 289 (M.D.Tenn. 1996), *aff.* 113 F.3d 1235 (6th Cir.1997). The right to vote, per se, is not a constitutionally protected right. *San Antonio Independent School District v. Rodriguez,* 411 U.S. 1, 35, n. 78, 93 S.Ct. 1279, 1298 n. 78, 36 L.Ed.2d 16 (1973). In *Welch v. Board of Education of Baltimore County,* 477 F.Supp. 959, 964 (D.Md.1979), the Court held that a Maryland statute providing for appointment of the school board in some of Maryland's counties did not authorize a suspect classification nor did it interfere with the exercise of fundamental rights. The judge in that case used the rationality test in making his decision. Since H.B. 269 does not violate a fundamental right, the court will evaluate the Plaintiffs' equal protection claims to determine whether the statute is rationally related to a legitimate state interest. *Rawls v. Sundquist,* 929 F.Supp. at 289–90.

■ The Plaintiffs allege that H.B. 269 violates the Equal Protection Clause of the Fourteenth Amendment and Article I, Section 2 of the Ohio Constitution because the Cleveland City School District residents living outside the City of Cleveland cannot vote for the mayor; the person who will control their school system.

The nine members of the board of education are selected by the mayor from a panel of eighteen nominees chosen by the municipal school district nominating panel. Of the eighteen nominees, three must reside outside the City of Cleveland. One of the three must be chosen to sit on the board. O.R.C. § 3311.71(C). This procedure deprives the mayor of complete autonomy in choosing the individual who will become a member of the board. Thus, those persons residing outside the City of Cleveland are ensured of being represented. This was not the case when the board members were elected.

■ In *Searcy v. Williams,* 656 F.2d 1003, 1009 (5th Cir.1981), *aff.* 455 U.S. 984, 102 S.Ct. 1605, 71 L.Ed.2d 844 (1982), the Court stated: *"Appointed school board systems are permissible under the Constitution so long as the appointments are not made in a manner that systematically excludes an element of the population from consideration."* Under H.B. 269 those residents living outside the City of Cleveland but in the municipal school district are assured of having one member on the board representing them.

*Holt Civic Club v. City of Tuscaloosa,* 439 U.S. 60, 99 S.Ct. 383, 58 L.Ed.2d 292 (1978), is analogous. In *Holt,* an Alabama statute extended the City of Tuscaloosa's police sanitary regulations, its criminal jurisdiction of the city's courts and the city's power to license businesses to residents of a community located outside the city. The Court, applying a rational basis test, held that the Equal Protection Clause was not violated by the city exercising governmental powers over individuals living outside the municipal borders even though they could not participate in municipal elections. The state legislature had a legitimate interest in ensuring that residents of the areas adjoining the city be provided basic municipal services. *Id.* 439 U.S. at 74, 99 S.Ct. at 392.

Defendants point out that although the residents living outside of the City of Cleveland cannot vote for mayor, they can vote for their state legislators. The state legislators passed H.B. 269, not the mayor. The state legislators are responsible for H.B. 269 and are accountable to voters if they disagree with the Act. Also, H.B. 269 was signed into law by the Governor of Ohio who is elected by the citizens of this state and accountable to them.

The governance structure implemented by the General Assembly by H .B. 269 wherein board members are nominated by members of the municipal school district to serve free from the political constraints inherent in an elected position and apparent in the Cleveland City School District, is rationally related to the purpose of supervising the municipal school district. H.B. 269 is not unconstitutional although residents of the municipal school district living outside the City of

Cleveland cannot vote for the mayor who ultimately chooses the members of the board.

■ The Plaintiffs allege H.B. 269 deprives them of the right to vote on the governance structure of the school system for a minimum of five years and for members of the school board for a minimum of six years, while voters in other school districts within the State of Ohio retain the right to vote on those issues.

■ In *Sailors v. Board of Education of the County of Kent,* 387 U.S. 105, 87 S.Ct. 1549, 18 L.Ed.2d 650 (1967), a Michigan statute provided for the appointment of a county board of education by delegates from the elected local boards. The Court held that no election was required for members of a board of education which performed essentially administrative functions and such procedure did not violate the Equal Protection Clause of the Fourteenth Amendment. The Court stated:

> We find no constitutional reason why state or local officers of the non-legislative character involved here may not be chosen by the governor, by the legislature, or by some other appointive means rather than by an election. Our cases have, in the main, dealt with elections for United States Senator or Congressman (*Gray v. Sanders* [372 U.S. 368, 83 S.Ct. 801, 9 L.Ed.2d 821], supra; *Wesberry v. Sanders,* 376 U.S. 1, 84 S.Ct. 526, 11 L.Ed.2d 481) or for state officers (*Gray v. Sanders,* supra) or for state legislators. *Reynolds v. Sims* [377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506], supra; *WMCA, Inc. v. Lomenzo,* 377 U.S. 633, 84 S.Ct. 1418, 12 L.Ed.2d 568; *Davis v. Mann,* 377 U.S. 678, 84 S.Ct. 1441, 12 L.Ed.2d 609; *Roman v. Sincock,* 377 U.S. 695, 84 S.Ct. 1449, 12 L.Ed.2d 620; *Lucas v. Forty-Fourth Gen. Assembly of State of Colo.,* 377 U.S. 713, 84 S.Ct. 1459, 12 L.Ed.2d 632; *Marshall v. Hare,* 378 U.S. 561, 84 S.Ct. 1912, 12 L.Ed.2d 1036.

387 U.S. at 108, 87 S.Ct. at 1552. A state legislature has constitutional authority to experiment. *Id.* 387 U.S. at 109, 87 S.Ct. at 1552. The Court realized that local governments need many innovations and great flexibility in municipal arrangements to meet changing conditions. A state can appoint local officials, elect them or combine elective and appointive systems. *Id.* 387 U.S. at 110, 87 S.Ct. at 1553. *See Welch v. Board of Education of Baltimore County,* 477 F.Supp. at 965.

The school board's functions are essentially administrative. Appointed school boards are beneficial in that they facilitate the operation of the municipal school district. Appointed school boards have provided an advantage over elected school boards by:

(1) insulating school governance matters from direct political pressures;

(2) promoting stable school board membership;

(3) encouraging the service of individuals who would not seek elective office;

(4) promoting diversity in viewpoints which otherwise may not achieve representation on an elected school board;

(5) avoiding the division of fiscal authority among multiple elected bodies;

(6) avoiding the fragmentation of local political authority; and

(7) avoiding the problem of single issue campaigns which frequently occur with elected school boards.

*Irby v. Virginia State Board of Elections,* 889 F.2d 1352, 1355 (4th cir.1989), *cert. denied,* 496 U.S. 906, 110 S.Ct. 2589, 110 L.Ed.2d 270 (1990). H.B. 269 does not violate the Equal Protection Clause in allowing appointment of local school board members in some areas while school board members are elected elsewhere in the State of Ohio.

■ The Plaintiffs allege in their third cause of action that H.B. 269 violates the Equal Protection Clause of the Fourteenth Amendment and Article I, Section 2 of the Ohio Constitution by eliminating all licensing, educational and experiential requirements for appointees with responsibilities of superintendent, treasurer and business manager in a municipal school district while these requirements are retained in all other school districts in the state. There is no rational basis for elimination of these requirements for su-

perintendent, treasurer and business manager.

Ohio Revised Code Section 3311.72(F) provides:

Notwithstanding section 3301.074 and Chapter 3319. of the Revised Code, no person appointed under this section shall be required to hold any license, certificate, or permit.

A statutory classification will be upheld as long as it bears some fair relationship to a legitimate public purpose. *Plyler v. Doe*, 457 U.S. at 216, 102 S.Ct. at 2394. The General Assembly has determined that a school district experiencing operational and financial difficulties may benefit from a more flexible hiring plan. For example, an individual experienced in business may be beneficial to a school district with financial problems. The less restrictive hiring criteria may result in the hiring of individuals with diverse backgrounds and experience who may have the ability to better handle the difficult problems arising in a municipal school district to which H.B. 269 applies. Ohio Revised Code Section 3311.72(F) bears a rational relationship to the state's interest in regenerating a municipal school district and ultimately benefitting the children attending the schools in the district.

Furthermore, the licensing requirement for superintendent of a school district in the State of Ohio has been relaxed. Ohio Revised Code Section 3319.225 authorizes the State Board of Education to issue a temporary educator license to any person a local school district desires to employ as a superintendent or administrator as long as the individual is of good moral character and has a degree from an accredited institution of higher education in a field related to finance or administration or has five years of recent work experience in education, management or administration. The temporary license may be renewed annually upon the request of the employing district. Therefore, the Court finds that elimination of certain licensing requirements in a municipal school district does not violate the Equal Protection Clause of the Fourteenth Amendment or Article I, Section 2 of the Ohio Constitution.

The Plaintiffs asserted in their complaint that H.B. 269 violates the Voting Rights Act, 42 U.S.C. § 1971, because it has a discriminatory impact on African–Americans. 42 U.S.C. § 1971(a)(1) provides in pertinent part:

All citizens of the United States who are otherwise qualified by law to vote at any election by the people in any State, Territory, district, county, city, parish, township, school district, municipality, or other territorial subdivision, shall be entitled and allowed to vote at all such elections, without distinction of race, color, or previous condition of servitude; any constitution, law custom, usage, or regulation of any State or Territory, or by or under its authority, to the contrary notwithstanding.

■ 42 U.S.C. § 1971(c) provides in pertinent part:

Whenever any person has engaged or there are reasonable grounds to believe that any person is about to engage in any act or practice which would deprive any other person of any right or privilege secured by subsection (a) or (b) of this section, the Attorney General may institute for the United States or in the name of the United States, a civil action or other proper proceeding for preventive relief, including an application for a permanent or temporary injunction, restraining order, or other order.

The terms of § 1971(c) specifically state that the Attorney General may institute a civil action to remedy a violation of the Voting Rights Act. An individual does not have a private right of action under § 1971. *Willing v. Lake Orion Community Schools Board of Trustees*, 924 F.Supp. 815, 820 (E.D.Mich.1996).

■ A private cause of action may be available under Section 5 of the Voting Rights Act, 42 U.S.C. § 1973c. *In African–American Citizens for Change v. St. Louis Board of Police Commissioners*, 24 F.3d 1052 (8th Cir.1994), a citizens action group challenged Missouri's method of appointing members to the city board of police commissioners. The Court quoted *Chisom v. Roemer*, 501 U.S. 380, 397, 111 S.Ct. 2354, 2365, 115 L.Ed.2d 348 (1991): *"Section 2(a) of the*

*Voting Rights Act 'covers every application of a qualification standard, practice or procedure that results in a denial or abridgment of the right to vote.'"* 24 F.3d at 1053. *Chisom* held that § 2 applied to judicial elections and that the State of Louisiana could exclude its judiciary from the Voting Rights Act by changing to an appointed system. 501 U.S. at 401, 111 S.Ct. at 2367, *African–American Citizens for Change,* 24 F.3d at 1053. Section 2 does not apply to appointive offices. *Irby v. Virginia State Board of Elections,* 889 F.2d 1352, 1357 (4th Cir.1989); *Searcy v. Williams,* 656 F.2d at 1010. *Chisom* allows Ohio to have municipal school district boards appointed or to change from an elected to an appointed system without violating the Voting Rights Act.

■ *In African–American Citizens for Change,* four out five city police board members were chosen by the governor. Plaintiffs alleged that this procedure unlawfully diluted African–American voting power as African–Americans were a much higher proportion of the city electorate than the statewide electorate. By granting controlling power to officials elected statewide, the power of African–Americans to influence and control the local police department would be diluted. All St. Louis voters, including African–Americans, would have less influence over local police affairs, but Section 2 of the Voting Rights Act is expressly limited to the political processes leading to nomination or election of state and local officials. Extending Section 2 to cover appointed state and local officials would *"work an unconstrained expansion"* of that statute that could only be authorized by Congress. *Id.* 24 F.3d at 1054.

Plaintiffs allegations under this cause of action are somewhat analogous to the facts in *African–Americans for Change,* i.e., the appointive system has a discriminatory impact on African–Americans. The Court finds that the Plaintiffs do not have a private cause of action under 42 U.S.C. § 1971 and that the Voting Rights Act does not apply to appointed officials.

Article VI, Section 3 of the Ohio Constitution provides that *"each school district embraced wholly or in part within any city shall have the power by referendum vote to determine for itself the number of members and the organization of the district board of education ..."* The Plaintiffs claim that H.B. 269 deprives them of their right to determine by referendum vote the number of members and the organization of the Cleveland School District Board of Education for a minimum of five years. Thus, H.B. 269 violates Article VI, Section 3 of the Ohio Constitution.[2]

■ Article VI, Sections 1, 2 and 3 of the Ohio Constitution grants the General Assembly the powers to provide for an efficient system of schools by taxation and for their organization, administration and control. *State ex rel. Core v. Green,* 160 Ohio St. 175, 180, 115 N.E.2d 157 (1953). The General Assembly has the authority to provide for the creation of school districts, for changes and modifications thereto and for the methods by which changes and modifications may be made. *Id.* Under Article VI, Section 3, provision is to be made by law for the organization, administration and control of the public school system and each school district must have the power by referendum vote to determine for itself the number of members and the organization of the district board of education. No language in Article VI, Section 3 requires that the voters pre-approve of any changes in the school board. The Ohio Supreme Court stated in *State ex rel. Ach v. Evans,* 90 Ohio St. 243, 249, 107 N.E. 537 (1914):

> It is obvious that this provision of the constitution does not require that, before any change shall be made in the old board, a referendum shall be provided determining what change shall be made. The change in membership is provided under the general exercise of legislative power, while the referendum is provided for under the new constitutional amendment and the new Jung school-board act passed pursuant to such new constitutional provision.

The Plaintiffs agree that the *Evans* case is the only relevant Ohio Supreme Court case interpreting the referendum provision of Ar-

---

2. *Plaintiffs' motion for judgment on the pleadings* concerns this issue.

ticle VI, Section 3 and they argue that it establishes a two year delay as the outside time limit for holding the referendum.

The *Evans* case involved the question of whether the Jung Act conflicted with Article VI, Section 3 because it could delay the vote until two years after the organizational changes occurred. Section 4705 of the bill in question provided that plans had to be submitted to the voters at the next general school election, if one occurred not less than 120 days after the passage of this resolution, otherwise at the second general school election. Because of the enactment date of the Bill, together with the 120 day limitation, the referendum could not occur until more than two years after the implementation of the new classification and the Plaintiffs contended that the 120 day limitation within which a referendum could not be held rendered the Bill unconstitutional. The Court recognized that the legislature has the power to determine when the act or part of it shall go into effect. The legislature is presumed to act in good faith. The fact that somebody disagrees with the legislature as to the time at which an act should take effect cannot cause it to be unconstitutional. *Id.* 90 Ohio St. at 247, 248, 107 N.E. 537. Article VI, Section 3 *"granted the legislature the power to provide by law for the exercise of the referendum power."* *Id.* at 249, 107 N.E. 537. The lengthy period was held to be constitutional.

Article XVIII, Section 5 of the Ohio Constitution was adopted on the same day as Article VI, Section 3. It provides:

Any municipality proceeding to acquire, construct, own, lease or operate a public utility, or to contract with any person or company therefor, shall act by ordinance and no such ordinance shall take effect until after thirty days from its passage. If within said thirty days a petition signed by ten per centum of the electors of the municipality shall be filed with the executive authority thereof demanding a referendum on such ordinance it shall not take effect until submitted to the electors and approved by a majority of those voting thereon.

In Article XVIII, Section 5, the legislature placed a limit on the municipality's authority

to regulate the referendum. The General Assembly has the power to delay or modify the procedure for the referendum vote. Article VI, Section 3 could have been limited in the same way but the legislature chose not to do so. The conclusion is that the legislature can regulate the referendum vote in an appropriate manner.

The seventh cause of action is related to the claim involving Article VI, Section 3 previously discussed. Article I, Section 20 of the Ohio Constitution states in part that *"all powers not herein delegated, remain with the people."* Article VI, Section 3 reserve to voters in a school district, the right to determine by referendum vote the number and organization of their board of education. The Plaintiffs assert that H.B. 269 deprives them of the powers reserved to them by Article VI, Section 3 and therefore, violates Article I, Section 20. In view of the Court's determination that H.B. 260 does not violate Article VI, Section 3, it follows that Article, I, Section 20 is not violated.

Article II, Section 26 of the Ohio Constitution requires that all laws of a general nature have a uniform operation throughout the state. Plaintiffs allege that H.B. 269 does not operate uniformly throughout the state because the definition of *"municipal school district"* is so restrictive as to apply solely and exclusively to the Cleveland City School District.

■■■■ The Ohio Supreme Court explained the definition of general nature and uniformity in *State ex rel. Zupancic v. Limbach,* 58 Ohio St.3d 130, 568 N.E.2d 1206 (1991). A statute is of a general nature if it affects the people of every county in the state. *Id.* 58 Ohio St.3d at 137, 138, 568 N.E.2d at 1212. If the subject matter of a statute is of a general nature it can be regulated by general laws having a uniform operation throughout the state. *Id.* 58 Ohio St.3d at 138, 568 N.E.2d at 1212, 1213. A statute not of a general nature cannot be regulated by general law because the law cannot operate where there is no subject matter on which to operate. *Id.* 58 Ohio St.3d at 138, 568 N.E.2d at 1213.

A law may not be rendered invalid by Article II, Section 26 even though it does not operate upon all persons, property or political subdivisions within the state. *Id.* However, the law must operate upon every person included within its operative provisions as long as its operative provisions are not arbitrarily and unnecessarily restrictive. *Id.* And a law will be valid if its provisions allow it to operate upon every locality where its specified conditions occur. *Id.* The court in *Limbach* stated: *"[A] statute is deemed to be uniform despite applying to only one case so long as it may apply to cases similarly situated in the future."* *Id.* Citing *Core, State ex rel., v. Green*, 160 Ohio St. at 183, 115 N.E.2d at 161–162.

H.B. 269's operative provisions apply to a *"school district that is or has ever been under a federal court order requiring supervision and operational, fiscal, and personnel management of the district by the state superintendent of public instruction."* O.R.C. 3311.71(A)(1). At the present time, the Cleveland City School District is the only school district to which H.B. 269 applies. However, nothing in H.B. 269 restricts it to the Cleveland City School District nor does any provision preclude other school districts from meeting the criteria of H.B. 269 in the future. H.B. 269 satisfies Ohio's requirement that all laws of a general nature operate uniformly throughout the state.

In their final cause of action, the Plaintiffs allege that allowing the same individual to act as the Mayor of Cleveland and to have control over the Cleveland City School District pursuant to H.B. 269 creates an inherent conflict of interest.

H.B 269 does not vest a mayor with actual control over the municipal school district. Pursuant to H.B. 269, a mayor appoints a chief executive officer as previously discussed in this opinion and nine members to serve on the board of education from a list of eighteen candidates nominated by a municipal school district nominating committee. Thereafter, the board and the chief executive officer assume control over the management and administration of the district. There is no conflict between a mayor's fiduciary duty to the city and his appointment authority under H.B. 269.

This cause of action is not premised on violation of the either the U.S. Constitution or the Ohio Constitution. A statute must be enforced unless it is in clear and irreconcilable conflict with some express provision of the constitution. *State ex rel. Price v. Huwe*, 105 Ohio St. 304, 306, 137 N.E. 167 (1922). No express provision in either of the constitutions conflicts with the mayor's responsibility under H.B. 269 to appoint board members.

The General Assembly has enacted a statute whereby the mayor, in certain circumstances, appoints school board members. If some conflict did exist under previous laws, the General Assembly's more recent, more specific statute takes precedence over earlier general legislation. O.R.C. § 1.52. *State ex rel. Brown v. Rockside Reclamation, Inc.*, 47 Ohio St.2d 76, 351 N.E.2d 448, 453 (1976). The Plaintiffs have not shown any incompatibility or conflict with any other law of Ohio.

Accordingly, for the reasons discussed above, the Court finds that the Plaintiffs have not stated a claim upon which relief can be granted. The Plaintiffs' motion for judgment on the pleadings is denied. The Defendants' motion for judgment on the pleadings is granted. The Court further finds that H.B. 269 is constitutional and will take effect when this Court releases the Cleveland City School District from state supervision under its Order of March 3, 1995 in *Reed v. Rhodes*, Case No. 1:73CV1300.

IT IS SO ORDERED.