James W. RILEY, Plaintiff,

v.

Robert SNYDER and Stanley Taylor, Defendants.

No. 98–677–JJF.

United States District Court, D. Delaware.

Sept. 28, 1999.

James W. Riley, Smyrna, DE, plaintiff pro se.

Mary Page Bailey, Deputy Attorney General of the Dept. of Justice of the State of Delaware, Wilmington, Delaware, for defendants.

## *OPINION*

FARNAN, Chief Judge.

Presently before the Court is a Motion For Temporary Restraining Order Or Preliminary Injunction (D.I.5) filed by Plaintiff, James W. Riley. By his Motion, Plaintiff requests the Court to issue an injunction requiring Defendants to treat inmates sentenced to death and confined in the maximum security unit the same as inmates in the general prison population. In response, the Defendants have filed a memorandum of points and authorities opposing Plaintiff's Motion and requesting the Court to dismiss Plaintiff's Complaint pursuant to the *Younger* abstention doctrine. (D.I.14, 31). For the reasons set forth below, the Court will deny Plaintiff's Motion For Temporary Restraining Order Or Preliminary Injunction.

## BACKGROUND

On September 30, 1998, Plaintiff filed a civil action in the Delaware Superior Court against Defendants Stanley Taylor, Robert Snyder and Ronald Hosterman seeking a declaratory judgment and temporary restraining order or preliminary injunction. In his complaint and motion for injunctive relief filed in the Delaware Superior Court, Plaintiff alleges that Defendants (1) violated state law by denying Plaintiff and other inmates sentenced to death the rules and regulations promulgated by the Delaware Department of Correction; (2) established a policy and practice of treating inmates sentenced to death in the maximum security unit differently than other inmates in violation of the Fourteenth Amendment, and (3) denied Plaintiff access to the materials and rules needed for him to pursue his claims in violation of the First Amendment. (D.I.14, Attached Cmplt. filed in Delaware Superior Court at ¶ 9–11, Attached Motion For Preliminary Injunction filed in Delaware Superior Court at ¶ 13–16). In response to Plaintiff's claims, Defendants have filed a motion to dismiss. To date, Plaintiff continues to pursue his state action, and therefore, the matter has not yet been resolved.

Subsequent to filing his action in the state superior court, Plaintiff filed this action against Defendants Snyder and Taylor alleging that Defendants violated his equal protection and due process rights by treating inmates sentenced to death in the maximum security unit differently from in-

mates in the general population, some of whom are also serving death sentences. Specifically, Plaintiff alleges that death row inmates in the maximum security unit are treated differently from other inmates in the areas of religious exercise, library access, vocational and employment opportunities, visitation privileges, exercise privileges, commissary privileges, VCR video movie privileges, television privileges, indoor recreational activities, and telephone privileges.

The Court granted Plaintiff's request to proceed in forma pauperis and assessed a partial filing fee of $6.23. (D.I.1, 2). Thereafter, Plaintiff filed a motion for reconsideration requesting the Court to reconsider its filing fee assessment. (D.I.15). The Court denied Plaintiff's motion for reconsideration (D.I.21), and Plaintiff appealed the Court's Order assessing the filing fee and the Court's Order denying Plaintiff's motion for reconsideration. On appeal, the Court of Appeals for the Third Circuit remanded Plaintiff's case and directed the Court to assess an initial partial filing fee of $.94 and order the prison to forward payment as funds become available in the Plaintiff's account. (D.I.27). In addition, the Third Circuit instructed the Court to proceed with Plaintiff's case without waiting to receive payment of the initial partial filing fee.

By letter dated August 23, 1999 (D.I.28), Plaintiff renewed his Motion For Temporary Restraining Order Or Preliminary Injunction and amended his Complaint to add two additional claims. First, Plaintiff contends that he and other similarly situated death sentenced inmates are being denied the opportunity to practice their religious beliefs in violation of the Religious Freedom Restoration Act and the First Amendment. Specifically, the Plaintiff contends that he has been unreasonably denied the opportunity to observe and participate in the "Islamic Holy month of Ramadan because prison officials fail to honor all the rules for serving meals in the time frames for fasting." (D.I. 28 at 7).

Second, Plaintiff contends that the law library in the maximum security unit is inadequate for him to pursue his post-conviction appeals.

With this background in mind, the Court will turn to the merits of Plaintiff's Motion For Temporary Restraining Order Or Preliminary Injunction and Defendants' request for dismissal pursuant to the *Younger* abstention doctrine.

## DISCUSSION

### I. Plaintiff's Motion For Injunctive Relief

#### A. *Standard of Review*

In order to obtain injunctive relief, the moving party must demonstrate: (1) the likelihood of success on the merits, (2) a threat of irreparable harm, (3) the lack of harm to the non-movant, and (4) that the public interest requires the relief requested. *Hoxworth v. Blinder Robinson & Co.*, 903 F.2d 186, 197 (3d Cir.1990); *Sullivan v. City of Pittsburgh*, 811 F.2d 171, 181 (3d Cir.), *cert. denied*, 484 U.S. 849, 108 S.Ct. 148, 98 L.Ed.2d 104 (1987). In the prison context, requests for injunctive relief "must always be viewed with great caution because 'judicial restraint is especially called for in dealing with the complex and intractable problems of prison administration.'" *Goff v. Harper*, 60 F.3d 518, 520 (8th Cir.1995) (citations omitted); *Forrest v. Nedab*, 1999 WL 552546, *3 (E.D.Pa. June 29, 1999). Further where a plaintiff requests injunctive relief that would require the court to interfere with the administration of a state prison, the court must consider the principles of federalism in determining the availability and scope of equitable relief. *Forrest*, 1999 WL 552546 at *3 (citing *Rizzo v. Goode*, 423 U.S. 362, 379, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976)).

#### B. *Whether Plaintiff Is Entitled To Injunctive Relief*

By his Motion, Plaintiff seeks an injunction requiring Defendants to treat inmates

sentenced to death and confined in the maximum security unit the same as inmates in the general population. Plaintiff's request would necessarily require the Court to interfere with the administration of the state prisons, and therefore, the Court must proceed with caution. *See Goff,* 60 F.3d at 520. After reviewing the submissions of the parties and balancing the factors required for injunctive relief, the Court concludes that Plaintiff is not entitled to an injunction.

1. Likelihood of Success on the Merits

After reviewing the allegations raised in Plaintiff's Complaint, the Court concludes that Plaintiff has not demonstrated a likelihood of success on the merits of his claims. For example, Plaintiff raises an equal protection claim on the ground that inmates sentenced to death and confined in the maximum security unit are not afforded the same rights and privileges as inmates in the general population. The mere fact that two groups may be treated differently does not necessarily violate the equal protection clause. *See Rawls v. Sundquist,* 929 F.Supp. 284, 289 (M.D.Tenn.1996), *aff'd* 113 F.3d 1235 (6th Cir.1997). Classifications which neither involve fundamental rights nor proceed along suspect lines are accorded a strong presumption of validity. *Heller v. Doe by Doe,* 509 U.S. 312, 319, 113 S.Ct. 2637, 125 L.Ed.2d 257 (1993). To the extent that Plaintiff's claim suggests that death row inmates confined in the maximum security unit are a suspect class, the Court finds no legal basis for such a conclusion. *See Rawls,* 929 F.Supp. at 289 ("There is no basis in law for defining death row inmates as a suspect class for purposes of the equal protection clause."). Further, many of the "rights" or privileges that Plaintiff contends that he has been denied by his classification in the maximum security unit are not constitutionally protected rights or privileges. For example, Plaintiff contends that death sentenced inmates in the maximum security unit are not afforded the same television and VCR video movie

privileges as inmates in the general population. However, it is well established that prisoners do no have a constitutional right to watch television. *See e.g. Murphy v. Walker,* 51 F.3d 714, 718 n. 8 (7th Cir. 1995); *Lester v. Clymer,* 1989 WL 66621, *2 (E.D.Pa.1989). Accordingly, to the extent that Plaintiff's equal protection claim is based on privileges which are not constitutionally protected rights and on a class which is not a suspect class, the Court concludes that Plaintiff's claim is not likely to succeed on the merits.

To the extent that Plaintiff's equal protection claim implicates constitutionally protected rights such as the free exercise of religion, the Court is required to determine (1) whether a constitutional violation has occurred, and (2) whether the challenged prison policies are reasonably related to legitimate penological interests. *Rawls,* 929 F.Supp. at 290. In the equal protection setting, if a regulation impinges on constitutional rights, the Plaintiff must show that the Defendants acted with discriminatory intent. *Id.* Thus, an analysis of Plaintiff's equal protection claim necessarily involves complex issues of law and fact under both equal protection law and the underlying constitutional law for the rights allegedly affected. Accordingly, the Court concludes that Plaintiff cannot establish a likelihood of success on the merits of his claims. *See Miller v. AT & T,* 344 F.Supp. 344, 349 (E.D.Pa.1972) ("There can be no substantial likelihood of success, if there are complex issues of law and fact, resolution of which is not free from doubt.")

Further, to the extent that Plaintiff's claims are based on his classification to the maximum security unit, the Court also concludes that Plaintiff cannot demonstrate a likelihood of success on the merits. In Delaware, inmates have no constitutionally protected interest in their classification. *Carrigan v. State of Delaware,* 957 F.Supp. 1376, 1385 (D.Del.1997). Accordingly, Plaintiff cannot demonstrate success on the merits of his classification claim.

■ Similarly, with respect to Plaintiff's claim that he is being prohibited from practicing Ramadan in violation of the Religious Freedom Restoration Act, the Court concludes that Plaintiff cannot show a likelihood of success on the merits. First, the Religious Freedom Restoration Act was found to be unconstitutional in *City of Boerne v. P.F. Flores,* 521 U.S. 507, 117 S.Ct. 2157, 138 L.Ed.2d 624 (1997), and therefore, a claim based on this Act will not succeed. Second, Plaintiff has not offered any evidence that he is prohibited from observing Ramadan. Ramadan is not celebrated until December on the Roman calendar, and Plaintiff has not offered any evidence that he has notified the prison administration that he wishes to practice Ramadan and that his request has been denied. Plaintiff asserts that the prison meal schedule conflicts with the time frame for fasting; however, the prison administration may be able to alter this schedule once Plaintiff notifies them of his intent to observe Ramadan. Because Plaintiff cannot, as a factual matter, establish that he has been denied the opportunity to practice Ramadan, Plaintiff cannot establish a likelihood of success on the merits of his claim. *See e.g. Forrest,* 1999 WL 552546 at *4 (denying injunction where factual issues exist and collecting cases).

## 2. Threat of Irreparable Harm

■ Even if Plaintiff can establish success on the merits with respect to some of his claims, Plaintiff is not entitled to injunctive relief, because he cannot show a threat of irreparable harm. Plaintiff is currently litigating an action in the Delaware Superior Court which raises substantially the same types of allegations that Plaintiff raises in this action. Because Plaintiff's claims are already being addressed by another court, the Court concludes that a denial of injunctive relief will

not cause Plaintiff to suffer irreparable harm.[1]

## 3. Harm to the Non–Movant

■ In addition to the previous considerations, the Court must also consider whether the grant or denial of injunctive relief would harm Defendants. The Court concludes that Defendants would suffer substantial harm if the Court were to grant the injunction Plaintiff requests. Prison administrators must be afforded wide-ranging deference in their policies and practices in order to maintain order, discipline and security in the prison. *See Bell v. Wolfish,* 441 U.S. 520, 547, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979); *Forrest,* 1999 WL 552546 at *4. Because the relief Plaintiff seeks goes to directly to the manner in which Defendants operate the prison, the Court concludes that an injunction would substantially harm Defendants.

## 4. Public Interest

■ Further, in assessing whether injunctive relief serves the public interest in this case, the Court reiterates its observation that prison administrators must be afforded deference in the manner in which they operate the prison. *Bell,* 441 U.S, at 547, 99 S.Ct. 1861. The public has a strong interest in the efficient and orderly operation of its prison system. *See e.g. Meachum v. Fano,* 427 U.S. 215, 229, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976) ("The federal courts do not sit to supervise state prisons, the administration of which is of acute interest to the States."); *Henderson v. Lane,* 979 F.2d 466, 468 (7th Cir.1992) (holding that state's interest in safe and orderly operation of its prison outweighed inmate's interest). Moreover, because Plaintiff's request for injunctive relief directly impacts the manner in which the Delaware prison system is operated, the Court must consider the principles of fed-

---

1. With respect to Plaintiff's claim that the law library is inadequate for him to pursue his post conviction appeal, the Court observes that Plaintiff has two attorneys representing

him in his post conviction claims. Accordingly, the Court concludes that Plaintiff cannot show irreparable harm with respect to this claim.

eralism and comity. *See Forrest,* 1999 WL 552546 at \*3 (citing *Rizzo,* 423 U.S. at 379, 96 S.Ct. 598). Indeed, the United States Supreme Court has recognized that "strong considerations of comity ... require giving the States the first opportunity to correct errors made in the internal administration of their prisons." *Lewis v. Casey,* 518 U.S. 343, 363, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996) (citations omitted). The Court finds the Supreme Court's observation to be particularly relevant in this case, because the state superior court is currently considering an action filed by Plaintiff which raises and/or implicates many of the issues raised by Plaintiff in this action. Thus, the Court concludes that granting injunctive relief in this case would be at odds with the notions of comity and federalism and would not serve the public interest.

### 5. Conclusion

In sum, the Court has weighed the factors required for injunctive relief and concludes that Plaintiff is not entitled to an injunction in this case. The harm to Defendants and the interference with the public interest in the orderly and effective administration of the prison outweighs any alleged harm to Plaintiff. Moreover, Plaintiff cannot show success on the merits of his claims. Accordingly, Plaintiff's Motion For Temporary Restraining Order Or Preliminary Injunction will be denied.

## II. *Younger* Abstention Doctrine

■ In its response to Plaintiff's Motion For Temporary Restraining Order, Defendants request the Court to dismiss Plaintiff's claim pursuant to the *Younger* abstention doctrine. Because Defendants raise this issue in the context of their response to Plaintiff's request for injunctive relief, the Plaintiff has not been afforded the opportunity to respond to Defendants' argument. Accordingly, the Court declines to consider Defendants' request for dismissal under the *Younger* doctrine, until such time as Defendants file a formal motion to dismiss, so that Plaintiff can be afforded adequate opportunity to respond.

## CONCLUSION

For the reasons discussed, Plaintiff's Motion For Temporary Restraining Order Or Preliminary Injunction will be denied.

An appropriate Order will be entered.

## *ORDER*

At Wilmington, this 28 day of September 1999, for the reasons set forth in the Opinion issued this date;

IT IS HEREBY ORDERED that Plaintiff's Motion For Temporary Restraining Order Or Preliminary Injunction (D.I.5) is DENIED.