OPINION *Page 2 
{¶ 1} Plaintiffs-appellants Shelby Association of Support Staff, OEA/NEA, Roger Phelps, Kelly Snyder and Bernie Marx appeal from the March 1, 2006, Judgment Entry of the Richland County Court of Common Pleas.
 STATEMENT OF THE FACTS AND CASE {¶ 2} On April 27, 2005, the State Auditor declared appellee Shelby City School District to be in a state of fiscal emergency under R.C.3316.03. As a result, a Financial Planning and Supervision Commission was appointed as required under R.C. 3315.05.
 {¶ 3} In June of 2005, the Financial Planning and Supervision Commission directed appellee Shelby City School District Board of Education to suspend, through a reduction in force, the employment contracts of 30 employees of the school district for financial reasons. Among those suspended were appellants Roger Phelps, Kelly Snyder and Bernie Marx, who were support staff employees. Appellants Shelby Association of Support Staff, OEA/NEA is their union.
 {¶ 4} Thereafter, on October 25, 2005, appellants filed a complaint for declaratory judgment, damages and injunctive relief against the Shelby City School District Board of Education, the Financial Planning and Supervision Commission for the Shelby City School District, Susan Tave Zelman, the Superintendent of Public Instruction, and Betty Montgomery, the former State Auditor. The current State Auditor is Mary Taylor. Appellants, in their complaint, alleged, in relevant part, that R.C. Chapter 3316 was unconstitutional. Appellants specifically alleged that, "[b]y imposing an unelected legal entity, Defendant Commission, that controls a city school district and public monies for a city school district . . . when voters in other city school districts without *Page 3 
a Commission continue to have the right to vote to elect their boards of education, R.C. Chapter 3316 violates the Equal Protection Clause of the Ohio Constitution, Art. I [Section] 2." Appellants, in their complaint, further alleged that R.C. Chapter 3316 was unconstitutional because it violated Article VI, Section 3 of the Ohio Constitution.
 {¶ 5} On November 15, 2005, appellees Financial Planning and Supervision Commission and Dr. Susan Tave Zelman filed a Motion to Dismiss pursuant to Civ.R. 12(B)(6). Such appellees, in their motion, alleged that the Equal Protection Clause was not violated because there was no fundamental right to an elected school board and because there was a rational basis for treating school districts in financial distress differently than solvent districts. Appellees also argued that the appointment of appellee Financial Planning and Supervision Commission did not limit the electors' ability to exercise their right to vote.
 {¶ 6} On December 7, 2005, appellee Auditor filed a Motion to Dismiss pursuant to Civ.R. 12(B)(1) and (6), arguing that appellants had failed to state a claim, that appellants lacked standing and that there was no subject matter jurisdiction because appellants' complaint did not present an actual controversy with respect to appellee Auditor.
 {¶ 7} Pursuant to a Judgment Entry filed on March 1, 2006, the trial court granted the Motions to Dismiss and dismissed appellants' claims for failure to state a claim upon which relief can be granted.
 {¶ 8} Shelby City School District Board of Education, which remained as a defendant, filed a Motion for Summary Judgment on March 30, 2006. Pursuant to a Notice of Partial Dismissal filed on September 13, 2006, appellant dismissed their *Page 4 
claims against Shelby City School District Board of Education with prejudice pursuant to Civ.R. 41(a).
 {¶ 9} Appellants now raise the following assignments of error on appeal:
 {¶ 10} "I. THE TRIAL COURT FAILED TO APPLY THE PROPER STANDARD IN DECIDING DEFENDANTS-APPELLEES' MOTIONS TO DISMISS.
 {¶ 11} "II. THE TRIAL COURT ERRED IN DISMISSING PLAINTIFFS-APPELLANTS' EQUAL PROTECTION CLAIM.
 {¶ 12} "III. THE TRIAL COURT ERRED IN DISMISSING PLAINTIFFS-APPELLANTS' CLAIM THAT THE APPOINTMENT OF DEFENDANT COMMISSION FOR THE SHELBY CITY SCHOOL DISTRICT DENIES PLAINTIFFS-APPELLANTS THEIR GUARANTEED RIGHT TO VOTE ON THE NUMBER OF MEMBERS AND THE ORGANIZATION OF A CONTROLLING LOCAL DISTRICT BOARD."
 {¶ 13} When reviewing the constitutionality of legislation, this Court must presume the statutes to be constitutional. Hughes v. Ohio Bur. ofMotor Vehicles (1997), 79 Ohio St.3d 305, 307, 681 N.E.2d 430, 432, citing State ex rel. Dickman v. Defenbacher (1955), 164 Ohio St. 142,128 N.E.2d 59. In Hughes, the Ohio Supreme Court held as follows: "In reviewing a statute, a court, if possible, will uphold its constitutionality. Winslow-Spacarb, Inc. v. Evatt (1945),144 Ohio St. 471, 475, 30 O.O. 97, 99, 59 N.E.2d 924, 926. All reasonable doubts as to the constitutionality of a statute must be resolved in its favor.Dickman. Courts have a duty to liberally construe statutes in order to save them from constitutional infirmities. Wilson v. Kennedy (1949),151 Ohio St. 485, 492, 86 N.E.2d 722, 725." Id at 307. *Page 5 
 I {¶ 14} Appellants, in their first assignment of error, argue that the trial court applied the incorrect standard of review in ruling on appellees' Motions to Dismiss. We disagree.
 {¶ 15} Our standard of review on a Civ.R. 12(B)(6) motion to dismiss is de novo. Perrysburg Township v. city of Rossford, 103 Ohio St.3d 79,81, 2004-Ohio-4362, 814 N.E.2d 44. A motion to dismiss for failure to state a claim upon which relief can be granted is procedural and tests the sufficiency of the complaint. State ex rel. Hanson v. Guernsey Cty.Bd. of Commrs., 65 Ohio St .3d 545, 548, 1992-Ohio-73, 605 N.E.2d 378. Under a de novo analysis, we must accept all factual allegations of the complaint as true and all reasonable inferences must be drawn in favor of the nonmoving party. Byrd. v. Faber (1991), 57 Ohio St.3d 56,565 N.E.2d 584. In order for the trial court to dismiss a complaint pursuant to Civ.R. 12(B)(6), the court must find beyond a doubt that the plaintiff can prove no set of facts that would support his claim for relief. O'Brien v. Univ. Community Tenants Union (1975),42 Ohio St.2d 242, 245, 327 N.E.2d 753.
 {¶ 16} In considering a Civ.R. 12(B)(6) motion to dismiss, a court is limited to the four corners of the complaint. Thompson v. Central OhioCellular, Inc. (1994), 93 Ohio App.3d 530, 639 N.E.2d 462.
 {¶ 17} Appellants, in their brief, specifically contend that the trial court erred in applying the above standard because the trial court improperly went beyond the four corners of the complaint. Appellants specifically point to the following statements in the trial court's March 1, 2006 Judgment Entry: *Page 6 
 {¶ 18} "(1) Except for its transfer of that fiscal authority, the school board has continued to govern the district in other matters like curricula, scheduling, use and access to facilities and dress code."
 {¶ 19} "(2) The only limitation [in Article VI, § 3 of the Ohio Constitution] is that for a city school district, as opposed to a rural or village local school district, the district voters may determine by referendum vote the number of members and organization of the district board of education."
 {¶ 20} "`(3) The General Assembly set out a rational basis for treating financially distressed school districts differently from other districts . . .' and `[b]ecause there is a rational governmental basis for the temporary transfer of fiscal control to the financial commission, there is no equal protection violation."
 {¶ 21} Appellants maintain that they did not make the above allegations in their complaint, and that, therefore, the trial court improperly looked beyond the allegations in the complaint and weighed the evidence. Appellants also contend that the very fact that the trial court employed a rational basis review to reach its decision proved that the trial court improperly considered more than just the allegations in the complaint to render its decision.
 {¶ 22} We, however, disagree. With respect to the first statement, we note that appellants, in their complaint, alleged that the Financial Planning and Supervision Commission assumed control of the legal and fiscal authority of the Shelby City School District. Appellants, in their complaint, specifically alleged that the commission used its authority to initiate a reduction in force. As noted by appellee Auditor, there is no evidence from the face of appellants' complaint that any other duties that are vested in *Page 7 
the school board, such as curricula, scheduling, etc., were transferred to appellant commission. Thus it can be inferred that the school board continues to govern the school district in other matters.
 {¶ 23} With respect to statement two (2) above, such statement simply contains legal conclusions based on the trial court's reading of ArticleVI, Section 3 of the Ohio Constitution and does not involve weighing of the factual allegations in appellants' complaint.
 {¶ 24} With respect to appellant's argument that the trial court's statement that "The General Assembly set out a rational basis for treating financially distressed school districts differently from other districts . . ." shows that that trial court weighed the evidence, we note that a similar argument was recently raised in BarnesvilleEducation Assoc. OEA/NEA v. Barnesville Exempted Village School DistrictBoard of Education, Belmont App. No. 06 BE 32, 2007-Ohio-1109, appeal not allowed 114 Ohio St.3d 1509, 872 N.E.2d 951, 2007-Ohio-4285. The appellants, in such case, alleged that the following italicized language in the court's entry demonstrated that the trial court improperly weighed the evidence: "The General Assembly has provided a rationalbasis for treating financially distressed school districts differentlyfrom other districts. That basis consists of a need to preserve the fiscal integrity of school districts."
 {¶ 25} In holding that the trial court did not apply an improper standard in ruling on the Motions to Dismiss pursuant to Civ.R. 12(B)(6) that were filed in such case, the court, in the Barnesville case, held, in relevant part, as follows: "Contrary to appellants' belief, this is not an adoption of the arguments of the parties seeking dismissal. Rather, it is a reference to the legislature's statutorilyexpressed policy and purposes [as *Page 8 
contained in R.C. 3116.02] for enacting the disputed statutes . . . Thus, the court's statement was an evaluation of the relevant law on the topic. It was not the acceptance of one parties' factual allegations over another's." Id at paragraphs 22-25.
 {¶ 26} We further note that the court in Spivey v. State of Ohio (N.D. Ohio), 999 F. Supp. 987, in applying Fed.R. 12(B)(6), which is textually similar to Ohio Civ.R. 12(B)(6), held that a court may go outside pleadings when ruling on a motion to dismiss for failure to state a claim in determining whether or not a statute bears a rational relationship to a legitimate state purpose.
 {¶ 27} Based on the foregoing, we find that the trial court did not apply the incorrect standard of review in ruling on appellees' Motions to Dismiss.
 {¶ 28} Appellants' first assignment of error is, therefore overruled.
 II {¶ 29} Appellants, in their second assignment of error, argue that the trial court erred in dismissing appellants' equal protection claim. We disagree.
 {¶ 30} In pertinent part, Article I, Section 2 of the Ohio Constitution reads as follows: "All political power is inherent in the people. Government is instituted for their equal protection and benefit, and they have the right to alter, reform or abolish the same, whenever they may deem it necessary . . ." This article is known as Ohio's "Equal Protection" Clause guaranteeing "that all similarly situated individuals be treated in a similar manner. . . . In other words, laws are to operate equally upon persons who are identified in the same class."State ex rel. Patterson v. Indus. Comm. (1996), 77 Ohio St.3d 201, 204,672 N.E.2d 1008. *Page 9 
 {¶ 31} In Kenney v. Kaiser-Aluminum and Chemical Corp. (1975),41 Ohio St.2d 120, 123, 322 N.E.2d 880, the Supreme Court held that "[t]he limitations upon governmental action by the Equal Protection Clauses of the Ohio and United States Constitutions are essentially identical." The Equal Protection Clauses of both the Ohio and Federal Constitutions forbid unequal treatment of similarly situated classes of persons, absent legitimate governmental interest. Keaton v. Ribbeck (1979),58 Ohio St.2d 443, 391 N.E.2d 307, State v. Buckley (1968),16 Ohio St.2d 128, 243 N.E.2d 66, and Beatty v. Akron City Hospital (1981),67 Ohio St.2d 483, 424 N.E.2d 586. The Supreme Court has required at least a rational basis to sustain a classification of any type. However, if the discrimination infringes upon a fundamental right, it becomes the subject of strict judicial scrutiny and will be upheld only upon a showing of a compelling State interest. In such a case, the State must assume the heavy burden of proving that the legislation is constitutional. Beatty, 67 Ohio St.2d at 491-92, 424 N.E.2d 586.
 {¶ 32} As is stated above, appellants, in their complaint, alleged that their right to equal protection under Article I, Section 2 of the Ohio Constitution was violated because, due to the appointment of appellee Financial Planning Commission and Supervision pursuant to state law, voters in financially strapped, as opposed to solvent, school districts are treated differently. Appellants note that through the appointment of appellee commission which assumed the fiscal powers of the Shelby City School District's elected school board, appellants and other voters in the Shelby City School District were treated differently than voters in school districts that are not in fiscal emergency. Appellants further contend that that right to vote is a fundamental right and *Page 10 
that, therefore, the trial court erred in applying the rational basis as opposed to strict scrutiny test.
 {¶ 33} Appellants are correct that the right to vote is a fundamental right. Dunn v. Blumstein (1972), 405 U.S. 330, 336, 92 S.Ct. 995,999-1000, 31 L.Ed.2d 274, 280. However, there is no constitutional right to an elected school board. In Spivey v. State of Ohio (N.D. Ohio 1998),999 F. Supp. 987, the residents of the Cleveland School District filed a declaratory judgment action, arguing that a law that changed their school board from an elected board to one appointed by a mayor violated equal protection guarantees. At the time, the Cleveland School District was under federal court supervision due to financial and operational problems. The plaintiffs, in the Spivey case, argued, in part, that such law deprived them of their right to vote for members of the school board. The court, in Spivey, held that the law did not violate the Equal Protection Clause in allowing appointment of local school board members in some areas while, in other areas, school board members were elected. The court found that there was no fundamental right to an elected school board. See also Mixon v. State of Ohio (C.A. 6 1999), 193 F.3d 389 in which the court held that "[although Plaintiffs have a fundamental right to vote in elections before them, there is no fundamental right to elect an administrative body such as a school board, even if other cities in the state may do so." Id. at 403. The plaintiffs, in Mixon, had argued that H.B. 269 unconstitutionally differentiated between those residents who resided in municipal school districts and those who did not by implementing an appointive system for school boards in municipal school districts while other school districts elected their school boards. H.B. 269 allowed the mayor to appointment a new school board for the Cleveland School District. *Page 11 
 {¶ 34} Moreover, recently, the Seventh District Court of Appeals for Ohio had the opportunity to determine whether or not the appointment of a commission to oversee the finances of a school district, which, like the Shelby City School District, had been declared to be in a state of fiscal emergency, violated the Equal Protection Clause of the Ohio Constitution. In rejecting such an argument, the Seventh District Court of Appeals, in the Barnesville case, held, in relevant part, as follows: "As the United States Supreme Court has held, there is no constitutional right to an elected school board. Sailors, 387 U.S. at 108.[1] Thus, the legislature can provide for filling a school board by election, appointment or a combination of election and appointment. Id. (rejecting equal protection arguments where Michigan allowed appointed county board to restructure elected school board's affairs).
 {¶ 35} "It is true that merely because the board could have been filled by appointment does not mean that the right to vote can be violated where a board is filled by election. Kramer v. Union Free Sch.Dist. (1969), 395 U.S. 621, 627-628. However, this does not lead to the conclusion that the right to vote is violated when a state legislatively removes certain financial powers from an elected board that remains functional in a fiscal emergency. The school board only has powers as granted by the legislature. State ex rel. Ohio Cong. of Parents Teachers v. State Bd. of Edn., 111 Ohio St.3d 568, 2006-Ohio-5512, ¶ 47
(rejecting argument that charter school constitutionally interferes with city school boards power and also holding that Section 3 of Article IV[2] of Ohio's Constitution governs questions of size and organization, not the *Page 12 
power and authority, of city school boards). Once statutorily granted, these powers are not forever fixed and immutable.
 {¶ 36} "To the contrary, the right to have an elected board member retain every power over finances that such member had when he was elected is not a fundamental right of a voter in a school district. As aforementioned, a classification does not automatically involve the fundamental right to vote merely because it affects a matter that can be traced back or connected to an original vote. See, also,Denseco, 84 Ohio St.3d at 544 (finding that classifications denying the right to vote on income tax issues to those who merely work in a city do not implicate the fundamental right to vote).
 {¶ 37} "In fact, there is another reason not mentioned by the parties that the right to vote is not impinged. In this case, the board members could not have had an absolute future right of decision-making over finances at the time they took office or at the time the voters placed their ballots. That is, board members are only elected for four-year terms. See R.C. 3313.09. The statutes on fiscal emergency relevant herein were enacted in 1996 and 1997 and were not applied to this school district until 2004. Thus, any board members whose financial powers were temporarily replaced by the Commission were elected after the statute gave them and the voters notice that an appointed Commission could supplant certain board functions in a fiscal emergency. Thus, the voters cast their ballots in all districts knowing that if their district is no longer similarly situated as other districts based upon extreme financial distress as a result of the elected board's financial management, then an appointed commission will be *Page 13 
created to remedy the financial situation. As such, the right to vote was not inappropriately diluted as alleged by appellants.
 {¶ 38} "In conclusion, the fundamental right to vote is not implicated by statutes that create an appointed commission to oversee an elected board of education's finances in a fiscally distressed district. Hence, any claimed classification of voters in different school districts is subject only to a rational basis review." Bamesville, supra, at paragraphs 40-44.
 {¶ 39} We concur with the analysis set forth in theBamesville case. In the case sub judice, the statutes on fiscal emergency were not applied to the Shelby City School District until 2005. Any of the school board members whose financial powers were usurped by the Financial Planning and Supervision Commission would have been elected after the statutes pertaining to the appointment of a Financial Planning and Supervision Commission for a school district in the case of a fiscal emergency were enacted in 1996 and 1997. Thus, at the time the voters in the Shelby City School District elected such board members, they were put on notice that an appointed commission could supplant certain board functions in a fiscal emergency.
 {¶ 40} In sum, there is no right to an elected school board. The Ohio Constitution allows voters in certain school districts to set the size and organization of a school board, but it's the legislature that provides for the organization, administration and control of the public school system. The legislature has provided for a commission to assume the financial powers of a school board in fiscal emergency and this law was in effect when the school board members in the case sub judice were elected. *Page 14 
 {¶ 41} We conclude, based upon an examination of the aforementioned case law, the Equal Protection Clauses of the U.S. and Ohio Constitutions and of Article VI, Section 3 of the Ohio Constitution, that the appointment of a Financial Planning and Supervision Commission pursuant to state law to assume the financial powers of an elected school board in fiscal emergency does not implicate the fundamental right to vote. As noted by the court in East Liverpool EducationAssociation, et al. v. East Liverpool City School District Board ofEducation, et al. (Oct. 4, 2006), Columbiana C.P. Court Case No. 05-CV-48, it is the power of the school board that was affected rather than the voter's right to elect the same.
 {¶ 42} Since we find no fundamental right implicated, we need only to determine if there is a rational basis to treat school districts which are in fiscal emergency differently than school districts which are not in fiscal emergency. The rational basis test involves a two-step analysis. We must first identify a valid state interest. Second, we must determine whether the method or means by which the state has chosen to advance that interest is rational. Buchman v. Wayne Trace Local SchoolDist. Bd. of Edn. (1995), 73 Ohio St.3d 260, 267, 269, 652 N.E.2d 952. Thus, provided the statutory framework is rationally related to a legitimate government interest, it will be upheld. Connors v. SterlingMilk Co. (1993), 98 Ohio App.3d 711, 715, 649 N.E.2d 856.
 {¶ 43} Clearly, the State of Ohio has a valid state interest in ensuring the financial integrity of school districts, which are funded with public monies. In holding that there is a rational basis for enacting the fiscal emergency statutes, the court, inBarnesville, held, in relevant part, as follows: "The fiscal emergency statutes here bear a rational relationship to various legitimate governmental purposes. For instance, by *Page 15 
allowing an appointed commission to lead the district out of debt, the state is experimenting with devices which may be implemented in the future for all school districts to avoid financial distress in the first place. The appointed commission also removes political pressure from financial decision-making. Moreover, the threat of a commission's appointment provides incentive for a marginally solvent district to improve their own finances. Additionally, school finances are important to the proper education of the state's children, which is a compelling state interest. Finally, we point to the legislature's ownstatutorily expressed interests and purposes:
 {¶ 44} "`(A) Pursuant to the authority of the general assembly to provide for the public health, safety, and welfare, it is hereby declared to be the public policy and a public purpose of the state to require fiscal integrity of school districts so that they can educate children, pay when due principal and interest on their debt obligations, meet financial obligations to their employees, vendors, and suppliers, and provide for proper financial accounting procedures, budgeting, and taxing practices. The failure of a school district to so act is hereby determined to affect adversely the health, safety, and welfare not only of the people of the school district but also of other people of the state.
 {¶ 45} "`(B) The intention of the general assembly, under this chapter, is to enact procedures, provide powers, and impose restrictions to assure fiscal integrity of school districts as set out in division (A) of this section.' R.C. 3116.02.'" Id at paragraphs 47-49.
 {¶ 46} We concur with the court's well-reasoned opinion in theBamesville case, especially in view of the State's overriding interest in providing students with a quality public education and interest in ensuring that public monies are used to accomplish this purpose in a fiscally responsible and efficient manner. *Page 16 
 {¶ 47} Based on the foregoing, we find that the trial court did not err in dismissing appellants' equal protection claim.
 {¶ 48} Appellants' second assignment of error is, therefore, overruled.
 III {¶ 49} Appellants, in their third assignment of error argue that the trial court erred in dismissing their claim that the appointment of the Financial Planning Supervision Commission for the Shelby City School District denied them their guaranteed right to vote on the number of members and organization of the local board of education. We disagree.
 {¶ 50} Appellants specifically cite to Article VI, Section 3 of the Ohio Constitution. Article VI, Section 3 of the Ohio Constitution states as follows: "Provision shall be made by law for the organization, administration and control of the public school system of the state supported by public funds: provided, that each school district embraced wholly or in part within any city shall have the power by referendum vote to determine for itself the number of members and the organization of the district board of education, and provision shall be made by law for the exercise of this power by such school districts."
 {¶ 51} As noted by the court in State ex rel. Ohio Congress of Parents Teachers v. State Bd. of Edn., 111 Ohio St.3d 568, 2006-Ohio-5512,857 N.E.2d 1148, "Section 3, Article IV [sic] governs questions of size and organization, not the power and authority, of city school boards. InMarion Local School Dist. Bd. of Edn. v. Marion Cty. Bd. of Edn. (1958),167 Ohio St. 543, 545, 150 N.E.2d 407, this court held that "[b]oards of education have only such powers as are conferred by statute." A board of education is "a mere instrumentality of the state to accomplish its purpose in establishing and *Page 17 
carrying forward a system of common schools throughout the state."Cincinnati Bd. of Edn. v. Volk (1905), 72 Ohio St. 469, 485,74 N.E. 646". Id at paragraph 47.
 {¶ 52} In the case sub judice, the local electorate is not denied the right to vote on the number and organization of the local board of education. The Shelby City School Board still exists and voters still have the right to vote on the number of members and organization of the board. As noted by appellee, "[n]othing in Chapter 3316 prohibits residents from emergency districts from pursuing [Section] 3, Art. VI referenda." The electors in an emergency district still have the ability to seek referenda on the structure of a school district board of education, which is the right provided by voters in Article VI, Section3 of the Ohio Constitution. Thus, we find that the trial court did not err in dismissing appellants' claim based on Article VI, Section 3 of the Ohio Constitution.
 {¶ 53} Appellants' third assignment of error is, therefore, overruled.
 {¶ 54} Appellee Auditor of State, in her brief, separately argues that there is no subject matter jurisdiction over her and that appellants lack standing to sue her. She further argues that there is no controversy between appellant and the Auditor of State. *Page 18 
 {¶ 55} However, having found that the relevant statutes are not unconstitutional and that the trial court did not err in granting the 12(B)(6) Motion to Dismiss, we find it unnecessary to address the merit of appellee Auditor's arguments.
 {¶ 56} For the foregoing reasons, the judgment of the Richland County Court of Common Pleas is affirmed.
 Edwards, J. Farmer, P.J. and Delaney, J. concur *Page 19 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Richland County Court of Common Pleas is affirmed. Costs assessed to appellants.
[1] The complete citation is Sailors v. Board of Educ. (1967),387 U.S. 105, 87 S.Ct. 1549.
[2] This appears to be a typographical error. It should refer to Article VI. Article VI, Section 3 of the Ohio Constitution reads as follows: "Provision shall be made by law for the organization, administration and control of the public school system of the state supported by public funds: provided, that each school district embraced wholly or in part within any city shall have the power by referendum vote to determine for itself the number of members and the organization of the district board of education, and provision shall be made by law for the exercise of this power by such school districts." *Page 1