EAST LIVERPOOL EDUCATION ASSOCIATION et al., Appellants,

v.

EAST LIVERPOOL CITY SCHOOL DISTRICT
BOARD OF EDUCATION et al., Appellees.

[Cite as *E. Liverpool Edn. Assn. v. E. Liverpool City School Dist. Bd. of Edn.*, 177 Ohio App.3d 87, 2008-Ohio-3327.]

Court of Appeals of Ohio,
Seventh District, Columbiana County.

No. 06 CO 61.

Decided June 30, 2008.

88

Green, Haines, Sgambati Co., L.P.A., Ira J. Mirkin, and Charles W. Oldfield; and Cloppert, Latanick, Sauter & Washburn, and David G. Latanick, for appellants East Liverpool Education Association, OEA/NEA et al.

Janik & Dorman, L.L.P., Andrew J. Dorman, and Eric J. Weiss; and Pepple & Waggone and Christian M. Williams, for appellee East Liverpool City School District Board of Education.

Nancy H. Rogers, Ohio Attorney General, and Todd R. Marti, Assistant Attorney General, for appellees Dr. Susan Tate Zelman and Financial Planning & Supervision Commission.

Nancy H. Rogers, Ohio Attorney General, and Aaron Epstein and Julie Kelley Cannatti, Assistant Attorneys General, for appellee Auditor of State.

WAITE, Judge.

{¶ 1} This action arose following teacher layoffs caused by a significant budget deficit in the East Liverpool School District. Appellants, the East Liverpool Education Association, OEA/NEA, and Pamela S. McDowell, filed a declaratory-judgment action in the Columbiana County Court of Common Pleas claiming that R.C. Chapter 3316, entitled "School District Fiscal Emergency," is unconstitutional because it violates the Contracts Clause, the Equal Protection Clause, and appellants' right to elected representation in violation of the Ohio Constitution. The association is a union that represents the teachers in the East Liverpool School District; McDowell, a teacher, is a member of the association. Appellants also sought to void the state auditor's underlying declaration of fiscal emergency. Following a motion for judgment on the pleadings and cross-motions for summary judgment, appellants' allegations were overruled and the defendants were granted judgment as a matter of law.

{¶ 2} In this appeal, appellants argue that the trial court erred when it concluded that only a school board can challenge a declaration of fiscal emergency, that the auditor erred in calculating the district's deficit, that they were

denied their fundamental right to an elected school board, and that R.C. Chapter 3316 violates the Equal Protection and Contracts Clauses. However, this court has recently rejected nearly identical constitutional challenges to the provisions at issue. See *Barnesville Edn. Assn. OEA/NEA v. Barnesville Exempted Village School Dist. Bd. of Edn.*, 7th Dist. No. 06 BE 32, 2007-Ohio-1109, 2007 WL 745095. Further, R.C. 3316.03(E) clearly provides that only the school district board of education can appeal the auditor's determination as to a fiscal emergency. Thus, appellants' arguments on appeal lack merit, and the trial court judgment is affirmed.

## FACTS AND PROCEDURAL HISTORY

{¶ 3} On September 29, 2003, the auditor of Ohio declared that the East Liverpool City School District Board of Education was in fiscal watch and that it had 60 days to submit a plan to eliminate the shortfall. The board did not prepare and submit a plan as provided under R.C. 3316.04(A). The auditor determined that the district was in a state of fiscal emergency on December 13, 2003. R.C. 3316.03. This declaration resulted in the creation of the Financial Planning and Supervision Commission for East Liverpool Schools pursuant to R.C. 3315.05(A).

{¶ 4} By statute, this type of commission is designed to eradicate a school district's financial deficits. Thus, a commission has the authority to reduce the number of teachers in the district, even if an applicable collective-bargaining agreement states otherwise, so long as the agreement took effect after November 21, 1997. R.C. 3316.07(A)(11). Following its creation, the commission in this case ordered a reduction in the number of teachers in the district in an effort to help correct the state of fiscal emergency.

{¶ 5} In response, appellants filed a declaratory-judgment action in the Columbiana County Court of Common Pleas against the board, the commission, the Ohio Department of Education, the superintendent of public instruction, Susan Tave Zelman, and the state auditor.

{¶ 6} Appellants asked the trial court to declare R.C. Chapter 3316 unconstitutional. They claimed that the application of R.C. Chapter 3316 retroactively alters their collective-bargaining agreement in that it authorizes a reduction in the number of teachers when a district is in a state of fiscal emergency contrary to the Contracts Clause. They also claimed that it denied their right of employment and improperly allowed the appointment of a commission, usurping their right to elected representation in violation of the Ohio Constitution and the Equal Protection Clause.

{¶ 7} Appellants hoped to void the auditor's December 18, 2003 declaration of fiscal emergency. They alleged that the auditor had erred in finding that the school district had a greater than ten percent deficit for the school year. This finding was a prerequisite to the declaration of fiscal emergency in this case. Appellants also claimed that the board breached its duty to submit a financial plan prior to the fiscal-emergency declaration and that its failure violated their due process rights. R.C. 3316.04.

{¶ 8} On July 26, 2006, the trial court granted the board partial judgment on the pleadings, and held that R.C. Chapter 3316 did not impair the Contracts Clause. It also denied appellants' claim that the board erred in failing to submit a financial plan when faced with a fiscal-emergency declaration. It rejected the claim that R.C. Chapter 3316 is unconstitutional. The trial court also held that any request relative to the reinstatement of teachers was subject to the grievance and arbitration procedure contained in the collective-bargaining agreement, and that the appropriate avenue to pursue these allegations was through this procedure and not in the courts.

{¶ 9} The trial court again granted the board's motion for partial judgment on the pleadings on August 1, 2006. This decision was virtually identical to its July 26, 2006 decision. On August 28, 2006, the trial court dismissed the board as a defendant since the remaining issues did not relate to the board.

{¶ 10} The court held a hearing on the remaining parties' cross-motions for summary judgment. The court granted summary judgment to the remaining defendants, i.e., the auditor and the commission, and overruled appellants' motions.

{¶ 11} Appellants timely appealed the trial court's decisions dated July 26, August 1, August 28, and October 4, 2006.

## ASSIGNMENT OF ERROR NO. 1

{¶ 12} "The trial court erred when it granted Appellees' motions for summary judgment and denied Appellants' motion for partial summary judgment."

{¶ 13} Our review of the trial court's summary judgment decision is de novo. *Coventry Twp. v. Ecker* (1995), 101 Ohio App.3d 38, 41, 654 N.E.2d 1327. Thus, we must conduct an independent review to determine whether summary judgment was appropriate. *McGee v. Goodyear Atomic Corp.* (1995), 103 Ohio App.3d 236, 241, 659 N.E.2d 317.

{¶ 14} The movant bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Civ.R. 56; *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 292, 662 N.E.2d 264. Summary judgment is appropriate when the moving party demonstrates that there is no

genuine issue of material fact, that it is entitled to judgment as a matter of law, and that reasonable minds can come to but one conclusion and that conclusion is adverse to the opposing party. Civ.R. 56; *Bostic v. Connor* (1988), 37 Ohio St.3d 144, 146, 524 N.E.2d 881.

{¶ 15} Appellants divide their first assignment of error into four subparts. In the first they assert:

{¶ 16} "A. The trial court erred when it found only the school board could challenge the Auditor's declaration of fiscal emergency."

{¶ 17} As a threshold matter, appellants argue that they have standing to pursue a legal challenge to the auditor's decision. Appellants reject the conclusion that R.C. 3316.03(E) permits only a school board to challenge the auditor's declaration of fiscal emergency. Appellants must win this argument as a prerequisite in their attempt to overturn the auditor's calculation of the school district's deficit because it was the deficit that formed part of the fiscal-emergency determination.

{¶ 18} Appellants' argument relies on an interpretation of R.C. 3316.03(E). When analyzing a statute, our primary goal is to apply the legislative intent set forth in the words of the statute. *State ex rel. Herman v. Klopfleisch* (1995), 72 Ohio St.3d 581, 584, 651 N.E.2d 995. Statutes that are drafted in plain and unambiguous language must be applied as written and given their usual and customary meaning. *Lake Hosp. Sys. v. Ohio Ins. Guar. Assn.* (1994), 69 Ohio St.3d 521, 524, 634 N.E.2d 611; *State ex rel. Solomon v. Police & Firemen's Disability & Pension Fund Bd. of Trustees* (1995), 72 Ohio St.3d 62, 65, 647 N.E.2d 486, citing R.C. 1.42. Statutes that are plain and unambiguous must be applied as written without further interpretation. See *Lake Hosp. Sys.*, 69 Ohio St.3d at 524, 634 N.E.2d 611. Courts should not disregard or delete portions of the statute through interpretation, nor insert language not present in the statute. *Whitaker v. M.T. Automotive, Inc.*, 111 Ohio St.3d 177, 2006-Ohio-5481, 855 N.E.2d 825, ¶ 15.

{¶ 19} R.C. 3316.03 sets forth several methods for the auditor to employ in assessing whether a school district is in a state of fiscal emergency. In this case, the auditor employed R.C. 3316.03(B)(5), which provides:

{¶ 20} "The auditor of state may issue an order declaring a school district to be in a state of fiscal emergency if all of the following conditions are satisfied:

{¶ 21} "(a) An operating deficit has been certified for the current fiscal year by the auditor of the state, and the certified operating deficit exceeds ten per cent, but does not exceed fifteen per cent, of the school district's general fund revenue for the preceding fiscal year;

{¶ 22} "(b) A majority of the voting electors have not voted in favor of levying a tax * * * that the auditor of state expects will raise enough additional revenue in the next succeeding fiscal year that division (B)(5)(a) of this section will not apply to the district in the next succeeding fiscal year;

{¶ 23} "(c) The auditor of state determines that a declaration of fiscal emergency is necessary to correct the district's fiscal problems and prevent further fiscal decline."

{¶ 24} R.C. 3316.03(E) confers a limited right to appeal the auditor's determination of fiscal emergency to the board of education of the school district. It states:

{¶ 25} "A determination by the auditor of state under this section that a fiscal emergency exists is final, *except that the board of education of the school district affected by such a determination may appeal the determination* of the existence of a fiscal emergency condition to the court of appeals having territorial jurisdiction over the school district. * * * In such appeal, determinations of the auditor of state shall be presumed to be valid and the board of education shall have the burden of proving, by clear and convincing evidence, that each of the determinations made by the auditor of state as to the existence of a fiscal emergency condition under this section was in error." (Emphasis added.)

{¶ 26} The governing statute does not grant any other party the right to dispute the auditor's fiscal-emergency determination. In enacting R.C. Chapter 3316, the legislature clearly intended to limit challenges to the auditor's determinations. It even requires that challenges appropriately made by the board of education of the school district must be established by clear and convincing evidence. The statute does not, however, permit the filing of a declaratory-judgment action by a teacher's association in the court of common pleas. In fact, but for the limited right of the school board to challenge this determination, the statute could not be more clear: the auditor's determination "is final." Thus, the East Liverpool Education Association does not have the right to appeal the auditor's findings underlying its determination that a fiscal emergency exists. R.C. 3316.03(E).

{¶ 27} Accordingly, the argument raised in this subsection of appellants' first assignment of error is unpersuasive.

{¶ 28} Appellants' second argument asserts,

{¶ 29} "B. The Auditor erred in calculating the school district's deficit."

{¶ 30} Again, R.C. 3316.03(B)(3)(5) states that the auditor may determine a state of fiscal emergency. Thereafter, R.C. 3316.03(E) authorizes only the school district to challenge the auditor's conclusion.

{¶ 31} The association does not have the right to challenge the auditor's fiscal-emergency determination. Thus, appellants do not have standing to assert the argument contained in this subsection of their first assignment of error.

{¶ 32} Appellants' third argument alleges,

{¶ 33} "C. Appellees were not entitled to summary judgment on Appellants' fifth claim and Appellants were entitled to summary judgment on their fifth claim."

{¶ 34} Appellants allege that R.C. Chapter 3316 is unconstitutional since it authorizes the appointment of a commission and allows this entity to usurp the authority of an otherwise elected city school board of education contrary to the Section 3, Article VI of the Ohio Constitution. They allege that the Ohio Constitution creates a fundamental right entitling city residents to elect the city school district board of education. Section 3, Article VI of the Ohio Constitution, "Organization, administration, and control of school system," states:

{¶ 35} "Provision shall be made by law for the organization, administration and control of the public school system of the state supported by public funds: provided, that each school district embraced wholly or in part within any city shall have the power by referendum vote to determine for itself the number of members and the organization of the district board of education, and provision shall be made by law for the exercise of this power by such school districts."

{¶ 36} Appellants claim that voters in this case elected their school board under Section 3, Article VI of the Ohio Constitution. However, the elected board was nullified by the later imposition of the commission following the fiscal emergency determination. As a result, their fundamental right was violated.

{¶ 37} Appellants' constitutional argument is unpersuasive. Section 3, Article VI of the Ohio Constitution grants each city school district the power to determine "the number of" and "organization of the district board of education." It does not bestow the right to determine the actual members of the board. See *Spivey v. State of Ohio* (N.D.Ohio, 1998), 999 F.Supp. 987. Further, the Ohio Constitution makes no mention of the right to vote on a Financial Planning and Supervision Commission in the event of a fiscal emergency. See *Shelby Assn. of Support Staff, OEA/NEA v. Shelby School Dist. Bd. of Edn.*, 5th Dist. No. 06CA86, 2008-Ohio-1388, ¶ 41.

{¶ 38} In addition, legislative enactments enjoy a strong presumption of constitutionality. *Desenco, Inc. v. Akron* (1999), 84 Ohio St.3d 535, 538, 706 N.E.2d 323. Before a statute can be declared unconstitutional, " 'it must appear beyond a reasonable doubt that the legislation and constitutional provisions are clearly incompatible.' " *Doyle v. Ohio Bur. of Motor Vehicles* (1990), 51 Ohio

St.3d 46, 47, 554 N.E.2d 97, quoting *State ex rel. Dickman v. Defenbacher* (1955), 164 Ohio St. 142, 57 O.O. 134, 128 N.E.2d 59, paragraph one of the syllabus.

{¶ 39} The statute and the Ohio Constitution are not incompatible. To the contrary, appellants, as registered city voters, did elect their school board. Thereafter, the commission was appointed to assume only the board's fiscal responsibilities during the state of fiscal emergency. The elected board retained all other rights and duties attendant to a school board. Further, upon the termination of the fiscal-emergency determination in the East Liverpool School District, the elected board will resume all duties, including those concerning fiscal management. *Barnesville*, 2007-Ohio-1109, 2007 WL 745095, at ¶ 34–37; *Shelby*, 2008-Ohio-1388, 2008 WL 787042.

{¶ 40} Appellants argue that *Barnesville* is distinguishable and does not control here, because the instant cause involves a city school district, and voters in a city school district have the right to an elected school board. Section 3, Article VI, Ohio Constitution. Unlike this case, *Barnesville* involved a village school district, and therefore, Section 3, Article VI of the Ohio Constitution did not apply. Notwithstanding the difference, *Barnesville* is still instructive and highlights both the board's and commission's responsibilities during a state of fiscal emergency and thereafter. Id. In *Barnesville*, this court found:

{¶ 41} "No one disputes that there is a fundamental right to vote. * * * However, 'not every limitation or incidental burden on the exercise of voting rights is subject to a stringent standard of review.' *Bullock v. Carter* (1972), 405 U.S. 134, 92 S.Ct. 849, 31 L.Ed.2d 92. * * * [D]iminishing the powers of an elected board of education due to a fiscal emergency does not violate the fundamental right to vote." Id. at ¶ 37.

{¶ 42} Further, the Supreme Court of Ohio in *State ex rel. Ohio Congress of Parents & Teachers v. State Bd. of Edn.*, 111 Ohio St.3d 568, 2006-Ohio-5512, 857 N.E.2d 1148, held at ¶ 47 that "Section 3, Article [VI] governs questions of size and organization, not the power and authority, of city school boards." Thus, the argument as to the alleged unconstitutional transfer of power from the board to the commission fails since the commission has no authority over the size or organization of a school board. Further, there clearly is a rational basis for the appointment of a commission when a district is faced with a state of fiscal emergency. Id. at ¶ 50.

{¶ 43} Based on the foregoing, this argument lacks merit and is overruled.

{¶ 44} Appellants' final argument in their first assignment of error asserts:

{¶ 45} "D. Appellees were not entitled to summary judgment on Appellants' sixth claim and Appellants were entitled to summary judgment on their sixth claim."

■ {¶ 46} Appellants allege that R.C. Chapter 3316 violates the Equal Protection Clause. They claim that it transfers an elected school district board's authority in a financially troubled district to an appointed commission, but does not do the same in solvent school districts.

■■ {¶ 47} "Equal protection under the law requires that no person or class of persons be denied the protection afforded by the law to other persons or classes in like circumstances. * * * The Equal Protection Clause does not prevent all classification, however. It simply forbids laws that treat persons differently when they are otherwise alike in all relevant respects." *State v. Alfieri* (1998), 132 Ohio App.3d 69, 77, 724 N.E.2d 477.

{¶ 48} In our recent decision in *Barnesville*, 2007-Ohio-1109, 2007 WL 745095, we rejected an identical Equal Protection Clause challenge to R.C. Chapter 3316. The appellants in *Barnesville* alleged that the application of R.C. Chapter 3316, and specifically the imposition of a commission to oversee the school's finances, violated their fundamental right to vote.

{¶ 49} We upheld the dismissal of the Equal Protection Clause challenge in *Barnesville*. We explained that the statute did not infringe on the fundamental right to vote because the elected school board members were not removed; instead they retained all of their duties except those relevant to financial decision-making. Further, once the fiscal emergency ceased, the board would once again control the financial aspects as well. Id. at ¶ 34–37; accord, *Shelby*, 5th Dist. No. 06CA86, 2008-Ohio-1388, 2008 WL 787042, at ¶ 34.

{¶ 50} We also noted that the United States Supreme Court has held that "there is no constitutional right to an elected school board." Id. at ¶ 40, citing *Sailors v. Bd. of Edn.* (1967), 387 U.S. 105, 87 S.Ct. 1549, 18 L.Ed.2d 650. Any alleged classification of school districts is subject to only a rational-basis review. The legislature had several rational bases for treating financially distressed school districts differently, including removing political pressure from financial decision-making and ensuring the proper education of children. Id. at ¶ 47, 50.

{¶ 51} Based on our recent analysis in *Barnesville*, we reject appellants' Equal Protection Clause argument as well. Because none of appellants' various arguments have merit, we overrule appellants' first assignment of error in total.

## ASSIGNMENT OF ERROR NO. 2

{¶ 52} "The trial court erred when it granted the Board's motion for partial judgment on the pleadings."

{¶ 53} "After the pleadings are closed but within such times as not to delay the trial, any party may move for judgment on the pleadings." Civ.R. 12(C). A

Civ.R. 12(C) motion is specifically limited to resolving questions of law. *Case W. Reserve Univ. v. Friedman* (1986), 33 Ohio App.3d 347, 348, 515 N.E.2d 1004.

{¶ 54} The Supreme Court of Ohio has held that this type of dismissal is appropriate only when "a court (1) construes the material allegations in the complaint, with all reasonable inferences to be drawn therefrom, in favor of the nonmoving party as true, and (2) finds beyond doubt, that the plaintiff could prove no set of facts in support of his claim that would entitle him to relief." *State ex rel. Midwest Pride IV, Inc. v. Pontious* (1996), 75 Ohio St.3d 565, 570, 664 N.E.2d 931. A judgment on the pleadings is improper if the plaintiffs raised any reasonable inferences that might entitle them to relief. *Flanagan v. Williams* (1993), 87 Ohio App.3d 768, 772, 623 N.E.2d 185.

{¶ 55} In considering a motion under Civ.R. 12(C), the trial court can consider only the face of the pleadings; the motion cannot be supported by facts outside the pleadings. *Epperly v. Medina City Bd. of Edn.* (1989), 64 Ohio App.3d 74, 580 N.E.2d 807, citing *Conant v. Johnson* (1964), 1 Ohio App.2d 133, 30 O.O.2d 157, 204 N.E.2d 100.

{¶ 56} Further, appellate review of a Civ.R. 12(C) motion is de novo, and a reviewing court will reverse a judgment on the pleadings if the plaintiffs can prove a set of facts that would entitle them to relief. *Flanagan*, 87 Ohio App.3d 768, 623 N.E.2d 185.

{¶ 57} The trial court's decision to grant the board's motion for partial judgment on the pleadings in this case concerned appellants' claim that the appointment of the commission and its subsequent reduction in the district's teacher workforce violated appellants' collective-bargaining agreement and thus violates their constitutional right to enter into contracts.

{¶ 58} R.C. 3316.07, entitled, "Powers and duties of commissions" states:

{¶ 59} "(A) A school district financial planning and supervision commission has the following powers, duties, and functions: * * * (11) To make reductions in force to bring the school district's budget into balance, notwithstanding * * * any collective bargaining agreement entered into on or after November 21, 1997."

{¶ 60} In *Barnesville*, 2007-Ohio-1109, 2007 WL 745095, we also addressed a Contracts Clause challenge to R.C. Chapter 3316. In order to prove a violation of the Contracts Clause, we concluded, a plaintiff must allege and establish that new legislation impaired an existing contract. *Barnesville* at ¶ 54. "Contracts entered into on or after the effective date of the disputed statute are not impaired and thus not entitled to the protection of the Contract Clause." Id., citing *Aetna Life Ins. Co. v. Schilling* (1993), 67 Ohio St.3d 164, 168, 616 N.E.2d 893.

{¶ 61} Here, appellants argue that R.C. Chapter 3316 operates as an unconstitutional impairment of their collective-bargaining agreement. They claim that the association and the board have been parties to a collective-bargaining agreement since 1994, and that it specifically calls for the negotiation of the terms and conditions of employment as well as the modification or deletion of any terms of their collective-bargaining agreement.

{¶ 62} However, the actual collective-bargaining agreement in effect and attached to appellants' second amended complaint is dated September 1, 2001, to August 31, 2004.

{¶ 63} Again, the facts in this case are strikingly similar to those in *Barnesville*. The plaintiffs in that case, which included an education association, claimed their agreement was violated by the subsequently enacted R.C. Chapter 3316. They attempted to establish 1995 as the effective date of their bargaining agreement by tracking their current 2001 contract back over two subsequent agreements and alleging that the subsequent agreements merely continued existing rights. Thus, they argued that R.C. 3316.07 operated as subsequent legislation that violated their existing contractual rights.

{¶ 64} This court, however, rejected this argument, finding:

{¶ 65} "[T]he parties' extension of contractual rights in a new contract does not affect the expiration date of the prior contract for purposes of the Contract Clause. In fact, R.C. 4117.09(E), referring to collective bargaining agreements of public employees, expressly provides:

{¶ 66} " 'No agreement shall contain an expiration date that is later than three years from the date of execution. The parties may extend any agreement, but the extensions do not affect the expiration date of the original agreement.'

{¶ 67} "For all of these reasons, a statute effective in 1996 and a statutory provision effective in 1997 do not act to impair existing contractual obligations where those laws were applied to impair obligations granted under an agreement that was not executed until 2001. The Contract Clause is not implicated, and we thus need not analyze the public purpose or propriety of the method for attaining that purpose under any test set forth by appellants. This assignment of error is without merit." Id. at ¶ 60–62.

{¶ 68} In the instant case, appellants' agreement was not executed until 2001. As such, the statute in question is not subsequent legislation impairing appellants' contract rights. Based on this court's recent analysis of the almost identical issue in *Barnesville,* we overrule appellants' second assignment of error.

## ASSIGNMENT OF ERROR NO. 3

{¶ 69} "The trial court erred when it found the Board was not required to submit a plan under R.C. 3316.04."

{¶ 70} This assignment of error takes issue with the trial court's conclusion that the board was not required to submit a written financial-recovery plan pursuant to R.C. 3316.04(A), which states:

{¶ 71} "Within sixty days of the auditor's declaration [of the existence of a fiscal watch] under division (A) of section 3316.03 of the Revised Code, *the board of education of the school district shall prepare and submit to the superintendent of public instruction a financial plan delineating the steps the board will take to eliminate the district's current operating deficit* and avoid incurring operating deficits in ensuing years, including the implementation of spending reductions. The superintendent of public instruction shall evaluate the initial financial plan, and either approve or disapprove it within thirty calendar days from the date of its submission. If the initial financial plan is disapproved, the state superintendent shall recommend modifications that will render the financial plan acceptable. No school district board shall implement a financial plan submitted to the superintendent of public instruction under this section unless the superintendent has approved the plan." (Emphasis added.)

{¶ 72} We must once more state that appellants have not established their standing to challenge the auditor's determination that a state of fiscal emergency existed. R.C. 3316.03(E). It is equally unclear in what manner appellants can claim to have standing to challenge the board's failure to submit the requisite financial-recovery plan, which resulted in the declaration of the state of fiscal emergency.

{¶ 73} As appellants contend, the trial court essentially found that the board was not required to submit a plan pursuant to R.C. 3316.04 in this case. Initially, the court acknowledged that the board must submit a plan pursuant to R.C. 3316.04(A). However, the trial court held that the board had no duty to comply in this case, explaining: the board's submission of a "Good Faith Plan was impossible in this case given the Collective Bargaining Contract Provision prohibiting layoffs of teachers for financial reasons. Plaintiffs themselves have been unable to propose any plan that would eliminate the deficits without laying off teachers. Because layoffs prior to a declaration of 'Fiscal Emergency' would have been impossible under the contract no plan eliminating the deficiency was possible. For this reason the Court finds no duty upon the Board to do that which is objectively and mathematically impossible." (Footnote omitted.)

{¶ 74} The trial court recognized that the board could have filed a plan in this case as required by R.C. 3316.04, but that the plan would have been a futile effort

and would not have prevented the determination that the district was in a fiscal emergency. Thus, the trial court held that the board's failure did not affect the ultimate fiscal-emergency determination.

{¶ 75} R.C. 3316.04(A) contains language mandating the submission of a detailed plan within 60 days of the auditor's declaration of fiscal watch. The board's plan must include "the steps the board will take to eliminate the district's current operating deficit and avoid incurring operating deficits in ensuing years, including the implementation of spending reductions." R.C. 3316.04(A). Furthermore, R.C. 3316.04(B) provides that the auditor and superintendent of public instruction "shall" provide assistance to the board, "including assistance in drafting the board's financial plan" upon request.

{¶ 76} It appears that a board cannot escape the statutory requirement to prepare a fiscal plan on the basis that any proposed plan will be unsuccessful. The consequences of the failure to submit a plan, though, are also set forth in the statute. R.C. 3316.03(B)(3) expressly recognizes that a school board may fail to submit a financial plan within 120 days after being placed on fiscal watch, and that the auditor must declare a fiscal emergency if the financial plan is not submitted within 120 days and if the declaration of fiscal emergency is necessary to prevent further fiscal decline of the school district. R.C. 3316.03(B)(3). Accordingly, a board in a state of fiscal watch is required to submit a fiscal plan, but is also on notice pursuant to statute that failure to submit a fiscal plan will likely result in the auditor declaring a fiscal emergency.

{¶ 77} Although it is clear that the board was required to submit a fiscal plan, we agree with the trial court that the board's failure to submit a financial plan was harmless because it was not the sole basis for the fiscal-emergency determination. We agree with the trial court's determination that the declaration of fiscal emergency would have been declared "no matter what plan the School Board filed." Further, the auditor had another basis for declaring the fiscal emergency—the school district had been operating at more than a ten percent deficit. R.C. 3316.03(B)(5).

{¶ 78} For the reasons cited above, we overrule appellants' third assignment of error.

{¶ 79} In conclusion, we hold that appellants have no standing to challenge the auditor's declaration of fiscal emergency or the individual determinations that went into the auditor's decision-making process in making that declaration. R.C. Chapter 3316 does not violate the fundamental right to vote or the Equal Protection Clause of the federal or state constitutions. We also hold that the failure of the board to file a fiscal plan after it had been placed in fiscal watch was

harmless. We hereby overrule all of appellants' assignments of error, and we affirm the judgment of the trial court.

Judgment affirmed.

DeGenaro, P.J., and Donofrio, J., concur.